12 Defendants SEE Attached   Southern District.

12 Defendants. See attached
SEE Pages attached 3A,
3B

# UNITED STATES DISTRICT COURT
Southern ~~District~~ DISTRICT OF NEW YORK

Southern

Kaazim Cooper AKA Kaazin
Cooper AKA Kazzim Cooper

**Plaintiff,**

[Insert full name of plaintiff/prisoner]

-against-

Judge Anne Swern, Detective Brengie
Vasquez (NYPD), Frank Bryant (OSI),
John Doe (OSI), ~~xxxxxxxxx~~
~~xxxx~~, John Doe NYPD officers
Jean Prisco ADA, Judge Curtis
Farber, (SEE Attached 12 Defendants)

**Defendant(s).**

[Insert full name(s) of defendant(s). If you need additional
space, please write "see attached" and insert a separate
page with the full names of the additional defendants. The
names listed above must be identical to those listed in Part I]

**CIVIL RIGHTS COMPLAINT**
42 U.S.C. § 1983

**JURY DEMAND**

YES __✓__   NO ____

Facts 26 pages
attached

legal claims/
Facts attached

I.   **Parties:** (In item A below, place your name in the first blank and provide your present
address and telephone number. Do the same for additional plaintiffs, if any.)

A.   **Name of plaintiff** Kaazim A. Cooper

If you are incarcerated, provide the name of the facility and address:

Elmira State Correctional Facility 1879 Davis
Street PO Box 500 Elmira, NY 14902

**Prisoner ID Number:** 24B2678

1

Facts/legal claims 26 pages attached
12 Defendants

SEE
Attached

SEE Attached 26 pages

~~#~~877 paragraphs

If you are not incarcerated, provide your current address:

_____

_____

_____

Telephone Number: _____

**B. List all defendants.** You must provide the full names of each defendant and the addresses at which each defendant may be served. The defendants listed here must match the defendants named in the caption on page 1.

Defendant No. 1

Anne Swern
**Full Name**

Judge
**Job Title**

100 Centre Street New York,
NY 10013
**Address**

Defendant No. 2

Brengie Vasguez
**Full Name**

NYPD Detective 28th Precint
**Job Title**

~~261~~ Frederick Douglass Bvld
121st & 122st New York, NY 10027
**Address**

Defendant No. 3

Frank Bryant
**Full Name**

OSI investigator NYDOCCS
**Job Title**

1220 Washington Avenue, Albany, NY ~~12226~~
12226-2050

2

SEE Attached Defendants Judge Farber, City of New York, and
John Doe NYPD officers (SEE Attached Defendants) Page 3 1A

**Address**

**Defendant No. 4**

John Doe OSI investigator
**Full Name**

OSI investigator NYDOCCS
**Job Title**

1220 Washington Avenue
Albany NY 12226-2050
**Address**

**Defendant No. 5**

Jean Prisoo
**Full Name**

Assistant District Attorney
**Job Title**

1 Hogan Place
New York, NY ~~XXXXX~~ 10007
**Address**

## II.    Statement of Claim:

(State briefly and concisely, the <u>facts</u> of your case. Include the date(s) of the event(s) alleged as well as the location where the events occurred. Include the names of each defendant and state how each person named was involved in the event you are claiming violated your rights. You need <u>not</u> give any legal arguments or cite to cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. You may use additional 8 ½ by 11 sheets of paper as necessary.)

Where did the events giving rise to your claim(s) occur? ~~XXXXXXXX~~ at local
Criminal court ~~XXXXXXX~~ 152 West 118st Apt 5E, Supreme
Court, ACDC, Rikers Island (OBCC),

When did the events happen? (include approximate time and date) 4/6/21, 4/8/21,
4/27/21, 4/30/21, 8/17/21, 9/14/21, 5/2/22,
3/11/24, 3/12/24  9/1/21, 9/10/21 2/6/22

SEE 26 Pages Attached

SEE Attached

**Facts: (what happened?)**

Jurisdiction & Venue

1. This is a civil action authorized by 42 USC 1983 to redress the deprivation, under color of state law of rights secured by the Constitution of the United States. The court has jurisdiction under 28 USC 1331 and 1343[a][3]. Plaintiff seeks declaratory relief pursuant to 28 USC 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 USC 2283 & 2284 and rule 65 of the Federal Rules of Civil Procedure. The plaintiff invokes supplemental jurisdiction of this court pursuant 28 USC 1367.

2. The Southern District is an appropriate venue under 28 USC 1391(b)(2) because it is where the events giving rise to this claim occurred.

**II.A. Injuries.** If you are claiming injuries as a result of the events you are complaining about, describe your injuries and state what medical treatment you required. Was medical treatment received?

SEE Attached

4

*SEE Attached 26 pages*

III.    **Relief:** State what relief you are seeking if you prevail on your complaint.

*SEE Attached*

I declare under penalty of perjury that on *August 11, 2024* I delivered this
                                        (date)
complaint to prison authorities at *Elmira Correctional Facility* to be mailed to the United
                                        (name of prison)
States District Court for the ~~Middle~~ District of New York.
                              *Southern*

I declare under penalty of perjury that the foregoing is true and correct.

Dated: *8/11/24*

*Khaazim Cooper*
Signature of Plaintiff

*Elmira CF*
Name of Prison Facility or Address if not Incarcerated

*Elmira CF 1879 Davis Street*
*Elmira, NY 14902*

Address

*24B2678, 15A3590*
Prisoner ID#

rev. 12/1/2015

5

Continued from page 4 of complaint

## Facts

3. On April 6, 2021 Defendant #2 Detective Brengie Vasquez submitted Search warrant application to Defendant #1 Judge Anne Swern requesting search of plaintiff's home at 152 West 118st Apt New York, NY 10026 stating "there is reasonable cause to believe that evidence of the commission of assault could be found in the form of the following property cellular phones, mobile devices, cameras, video recorders and or other electronic devices ~~the cost~~ and/or equipment capable of storing data, information and images and their components and accessories, including but not limited to wires, cords, monitors, software, hard drives and charges, belonging to or possessed by the plaintiff's subject alias KAZZIM COOPER" SEE Amended Search Warrant Affidavit in support of search warrant" Paragraph (2)(c) page 1 ~~xxxxxxxxxxxxx~~ Exhibit A 10 pages. ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~ Defendant Vasquez filed original Search warrant affidavit on April 7, 2021 before amended version.

4. Page 3 of Search warrant paragraphs 7 through 10 "Factual Background and probable cause" section omits anything relating to use of cell phone or other accessories relating to commission of assault. SEE Ex A

5. Defendant Swern accepts such application and Search warrant is executed by defendant Vasquez and John Doe NYPD officers at plaintiff's home on April 8, 2021 and they ~~take~~ take cell phone belonging to plaintiff and unspecified clothing. John Doe NYPD officers Defendants #8, Defendant #5 Jean Prisco also applied for search warrant described in paragraph 3. SEE Page 6 Ex A. Defendant Vasquez states in Search warrant application that ~~xxxxxx~~ he

2 of 26

Spoke with plaintiff's parole officer on April 6, 2021 who indicated last speaking with or visiting plaintiff on April 1, 2021 SEE Page 5 Exhibit A. Plaintiff was on parole for previous assault conviction under subject alias Kazzim Cooper DIN 15A3590. Plaintiff's parole sentence pertaining to that conviction was terminated on January 18, 2022. On 4/8/21 Parole officer Libby Black charges Plaintiff with assault and issues absconder warrant #839282. writes report 4/6/21

6. On April 30, 2021 plaintiff was indicted for assault and warrant for Arrest was issued after evidence was presented to grand jury on April 27, 2021.

7. Plaintiff was arrested in Arlington Virginia by Arlington County Police Department (ACPD) for Misdemeanor offenses plaintiff is transported to Arlington County Detention Center (ACDC). Plaintiff was told he had outstanding Parole & Supreme Warrant

8. Upon Admittance to ACDC his property was vouchered which consisted of 2 Credit Cards, NY Social Security Card, NY State ID, and Samsung Galaxy Phone SEE Exhibit(B) "Inmate Property Inventory Report". Plaintiff was also detained on NY Supreme Court warrant and NY Parole warrant.

9. On August 17, 2021 Defendant Frank Bryant and Defendant John Doe OSI investigators (NYDOCCS) pulled up to ACDC to extradite plaintiff back to NY for parole warrant and given delegated authority to execute Supreme Court warrant. SEE Notice of Violation" signed by Defendant Bryant Exhibit(C) on 8/17/21.

10. Defendants Bryant & Doe were given plaintiff's property items vouchered upon

3 of 26

admittance and drove plaintiff to Ronald Reagan Airport. The food court at Airport plaintiff asked could he buy items with his credit cards in Defendants possession Defendants told him "These are no longer your property."

11. We arrive at LaGuardia Airport in NY and defendants drive plaintiff to popeyes chicken which had Deli next door plaintiff ask defendants to buy items from Deli with credit cards Defendant John Doe OSI investigator told plaintiff "if he asks for property again he wont see it again"

12. Defendants then take plaintiff to Rikers Island OBCC. When plaintiff and Defendants Bryant & Doe pull up to OBCC plaintiff tells Defendants that they left property bag in car and Defendants said "they will bring it in". Plaintiff was admitted to OBCC Rikers and Defendants left. Plaintiff asked Rikers OBCC intake officer when he was vouchering his other property such as clothes "did defendants bring property bag in?" They said no and gave him property receipt which only indicates Coat/Jacket and pants SEE Property Receipt #1850643.

13. On several occasions leading up to Plaintiff's September 23, 2021 arraignment on Superior Court indictment issued on 4/30/21 Defendants John Doe OBCC Corrections officers Between September 1, 2021 and September

4 of 26

14, 2021 particularly on September 1, 2021 and September 10, 2021 approached plaintiff telling him "he had a warrant for his arrest and that they have to take him to court"; Plaintiff refused on all occassions telling Defendants "If the NYPD or FBI isnt on Rikers to arrest me then I'm not going with yall".

14, On September 14, 2021 a Defendant Judge Curtis Farber issued "Force order" directing OBCC Rikers to bring plaintiff to court to be arrested. Plaintiff initially refuses and Defendant #12 John Doe OBCC Captain tells plaintiff "I dont know what gang you down with Crip or Blood but if you Crip you gon' leave here Cripple and if you Blood you gon leave here bleeding if you dont come with us." Plaintiff then submits, through coercive threats of physical violence by John Doe Defendants officers and Captain and is transported to 100 Centre St Supreme Court by NYC DOCS.

15, At court plaintiff is met by Defendant Vasquez. Plaintiff asks defendant Vasquez what day did he get indictment? Defendant lies and says April 4, 2021. Plaintiff is fingerprinted and picture taken and is transported back to Rikers.

16, On September 23, 2021 plaintiff is arraigned in Defendant Judge

5 of 26

Farber's Court part 81 Supreme NY County. Plaintiff is assigned defense counsel, Glenn Hardy.

17. On October 21, 2021 counsel Hardy sends plaintiff grand jury transcripts 31 pages SEE Exhibit(E) "Grand jury transcripts" None of the witnesses who testified at grand jury any disclose evidence relating to Cell phone. SEE Ex(E).

18. On February 6, 2022 Defense counsel Hardy files "Motion to Controvert" Affirming that "The Warrant to Search the Defendant's cell phone/ electronic devices is invalid as not being premised upon probable cause and Defendant possesses standing to challenge the said search and seizure because he lives at target premises and has expectation of privacy." SEE Motion to Controvert Exhibit(F) 15 pages 36 paragraphs.

19. On May 2, 2022 Defendant Judge Farber denies Motion to Controvert Cell phone search and seizure. Certificate of Compliance filed March 10, 2022.

20. On March 11, 2024 plaintiff appears in Court part 85 111 Centre Street NY County Supreme Court for pretrial Hearings. At hearing and Assistant District Attorney Sarah Lubin states that " Clothes, cell phone and other accessories seized at plaintiff's home stemming from Search warrant was granted on April 6, 2021 and execution on April 8, 2021 was lost in police inventory. Judge Miriam Best who was presiding

6 of 26

~~~~~ asks ADA Lubin does she Know if this evidence was lost or destroyed before or after grand jury presentation and ADA Lubin says she isn't sure.

21. On March 13, 2024 plaintiff was convicted of assault in part 85 Supreme Court NY County. Plaintiff was not able to get copy of search warrant affidavit until 3/10/22 Certificate of Compliance filed

## Legal Claims/Legal argument

22. This Action is brought pursuant 42 USC 1983 to redress State and city officials conspiring to deprive plaintiff rights and immunities secured to him by US Constitution and Supplemental State Claims pursuant 28 USC 1367. The plaintiff also asserts that defendants violated his rights as individuals.

23. Defendant Judge Anne Swern was served with search warrant application by defendant Vasquez for search of plaintiff's residence after an assault took place. The search warrant application indicates the plaintiff's adress as the "Target Premises" and states that there is reasonable cause to believe that evidence of the commission of Assault may be found in the form of the following property described in paragraphs ~~~~~ 2 page 1 exhibit (A) Subsections ~~~~~ c, d, e, page 2 paragraph 3 Ex(A) Subsections

7 of 26

a, b, c, d, e, f, g, h, i. Paragraphs 4 and 5. Plaintiff is not suing for property described in 2 a, or b because his parole officer said she identified or recognized him from clothing suspect was wearing at time of offenses SEE Grand jury transcripts Ex(E). For clarification plaintiff is suing Defendant Swern Judge for search and or seizure of property or forms of property "described in 🖋 Search warrant Affidavit Ex(A) page 1 paragraph 2 subsections (C) through(e) and page 2 paragraph 3 subsections(a)through(i) and paragraphs 4 and 5. Plaintiff is Deferential to the ruling in Heck v Humphrey in regards to the clothing he excludes described in paragraph 2(a) &(b) being used against plaintiff in criminal trial.

## Constitutional Claims /

Defendant Judge Swern violated plaintiff's Kaazim Cooper's fourth amendment rights to be free from illegal search and seizure without probable cause and fourteenth amendment due process rights when search warrant application is oblivious of any evidence relating to use of cell phone or electronic devices codified in affidavit and CPL 690.10 ~~Wala~~ "Search warrants; property Subject to seizure" this is unlawful seizure pursuant this statue. Defendant Swern in total disregard to plaintiff's constitutional ~~●~~ rights authorize search and seizure Mapp v ohio Dunaway V New York 442 US 200, US V Place 462 US 696. Plaintiff's former defense counsel Glenn Hardy also cites in his Motion to Controvert cell phone search and seizure several state and federal cases relating to prerequisites for the searching

8 of 26

of electronic devices. People v Colvin 58 misc 3d 996 interpreting CPL 690.10(3),(4), People v Brown 96 NY 2d 80, US v Galpin 720 F. 3d 436 (2d circuit), Groh v Ramirez 540 US 551, Riley v California 573 US 134. The police did not have probable cause based on anything they could have observed or been informed of which would have justified the issuance of a search warrant pursuant CPL 690.10, thereby violating plaintiff's fourth and fourteenth amendment rights by defendant Swern. In Marron v US 275 US 196 The Supreme Court laid out the rationale for the particularity requirement "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant" The Court of Appeals has cited Marron and Andresen v Maryland 427 US 463 "To minimize invasiveness the fourth amendment requires that the judges directive be specific enough to leave no discretion to the executing officer" SEE People v Dorling 95 NY 2d 530. Defendant Judge Swern conspired with Defendant Brengie Vasquez to violate fourth amendment, fourteenth amendment due process and equal protection of laws clauses when confiscating defendant cell phone specifically and authorizing search of other electronic devices.

## Equal Protection of laws

Defendant Judge Anne Swern conspired with Defendant Vasquez to violate plaintiff's right to equal protection of laws because of plaintiff's custodial status

9 of 26

as a parolee. NYDOCCS ~~etc~~ Division of Parole has rules and regulations that allow parole officers to search their parolees phone and impose special conditions upon parolee prohibiting them from using cell phone" SEE People ex rel Rodriguez V Warden Eric M Taylor Center 2020 NY Misc LEXIS 22268. Defendant Vasquez states in affidavit that plaintiff's PO pulled up to his home on 4/1/21 and saw plaintiff their and visited on 4/6/21. So Defendants deliberately deprived plaintiff of due process and fourth amendment rights, because of his status as parolee. "The Equal Protection Clause requires the State to treat people alike when they are in similar situations" Unger V Dept of Corr 31 F 3d 727 (8th Cir 1994) Although plaintiff was on parole at time of authorization and execution of search warrant and search and seizure of cell phone this warrant was applied for by defendant Vasquez NYPD 28th Precint 11169 and executed by Defendant Vasquez and John Doe NYPD officers Defendants, thereby defendant was ostracized for being on parole". The equal protection Clause prohibits purposeful discrimination" McClesky V Kemp 481 US 279. Defendants Vasquez and Defendant Swern Conspired to violate plaintiff's right to equal protection of law when they placed themselves in ~~a~~ qua capacity of parole officers when original search warrant affidavit submitted April 6, 2021 states plaintiff was on parole and Parole officer Libby Black visited him on numerous occassions. Parole officer Libby Black issued absconder warrant charging plaintiff assault in Parole Violation report on April 8, 2021. Defendant Vasquez and Swern waited to parole issued this warrant to issue Amended Search warrant Exhibit (A)

10 of 26

Defedants were in the qua capacity of parole officers because CPL 120.55 who delegates parole officers to execute arrest warrants pursuant CPL 210.10. CPL 210.10(6) states "Upon such request for delegation the delegated police officer is to the same extent as the delegating officer." Defendants acting in capacity as parole officers placed search warrant in qua capacity of arrest warrant and acted as delegating parole officers applying for authorizing, and John Doe NYPD Defendants executing warrant when searching and seizing plaintiff's phone placing conditions on plaintiff such as randomly searching parolee's phone and prohibiting the use of cell phone (SEE People ex rel Rodriguez V Warden Eric M Taylor Center) Thereby conspiring to violate plaintiff's fourth and fourteenth and Equal Protection of law rights, because of plaintiff's custodial status as parolee. The plaintiff alternatively request or asserts violation of Equal protection clause by "arbitrarily and irrationally" singling out "plaintiff as black man of African Descent when there was no rational to conduct search and seizure of cell phone other electronic devices and surveillance of plaintiff's home SEE Village Of Willowbrook v Olech 528 US 562

24. Defendant Judge Anne Swern is being sued in her individual capacity for money damages, and for declaratory relief for conspiracy to deprive plaintiff of fourth, fourteenth and equal protection of law. Defendant Swern acted under the color of State law at all times relevent to this complaint. Defendant Swern is being sued in Official capacity for compensatory damages.

11 of 26

25. Plaintiff is requesting punitive damages in the amount of $175,000 from Defendant Judge Swern

26. Defendant is request Compensatory Damages in the amount of $30,000 from defendant Judge Swern

## Defenses

27. The defense of Absolute immunity is not available for defendant Swern because she conspired with Defendant Vasquez acting in qua capacity as parole officers deliberately depriving plaintiff of fourth, fourteenth amendment due process placing conditions such capraciously searching phone and prohibiting the use of cell phone when seizing and searching plaintiff's phone without probable cause for his custodial status as parolee thereby violating Equal protection Clause of fourteenth amendment. SEE Mireles V Waco 502 US 9 and Bradley V Fisher 80 US 335 acting in absence of jurisdiction.

28. The Statue of limitations defense isnt available to Defendants Swern, Vasquez or John Doe NYPD officers. SEE Williams V City of New York 153 AD 3d 1301 "Cause of action for civil rights violations pursuant 42 USC 1983 accrues, and three year statue of limitations begins to run, when the plaintiff knows or has reason to know of the injury which is the basis of his or her action" The plaintiff did not get arrested for this offense until August 17, 2021 plaintiff did not get arraigned for this offense until September 23, 2021

and assigned defense counsel defense counsel did not give plaintiff copy of search warrant/affidavit (Ex (A)) at arraignment nor when he sent him grand jury transcripts on October 21, 2021 or even when he filed motion to controvert search warrant on February 6, 2021. Plaintiff was not able to review or scrutinize ~~search those~~ search warrant until March 10, 2022 when ADA filed certificate of compliance pursuant CPL 245.50. "Under federal law which governs the accrual of claims brought under 1983 a claim accrues once the plaintiff knows or has reason to know of the injury which is the basis of his action" Veal V Geraci 23 F3d 722 (2d Circuit)

## Heck V Humphrey

29.  The ruling in Heck V Humphrey 512 US 477 does not apply to ~~Plaintiff~~ Plaintiff because theres nothing related to cell phone seizure or search that implicated plaintiff for initial search and seizure or other electronic devices and no evidence of use of cell phone was disclosed to grand jury (SEE Ex (E) Grand jury transcripts 31 pages). On March 11, 2024 ADA Sarah Lubin Stated "Cell phone that was taken in April 8, 2021 search & seizure would not be used against plaintiff because NYPD lost it in police inventory." ADA asks Judge if she knew if police lost evidence before it was presented to the grand jury ADA Lubin says she's not sure." Thereby the ruling in Heck doesn't apply to plaintiff because nothing in search warrant or evidence derived therefrom implies the invalidity of plaintiff's conviction besides the clothing at which plaintiff is not suing for. Plaintiff is not suing for clothing seized during search.

13 of 26

30. Defendant NYPD Detective Brengie Vasquez violated plaintiff's fourth, fourteenth, and Equal protection of law rights when conspiring with ADA Defendant Jean prisco and Defendant Swern and John Doe NYPD officers to Applying for and executing search warrant without probable cause denying plaintiff due process because of his custodial status as parolee and placing himself and Defendants John Doe as NYPD officers in capacity of parole officers thereby violating equal protection of laws.

31. Defendant Vasquez NYPD 11169 is being sued in his individual capacity for punitive damages and compensatory damages. Defendant Vasquez is being sued in his official capacity for compensatory damages. Defendant is being sued in his official capacity for declaratory relief. Defendant Vasquez acted under Color of State law at all times relevant to this complaint.

32. Plaintiff is requesting $100,000 in punitive damages from Defendant Vasquez.

33. Plaintiff is requesting $22,000 in compensatory damages from defendant Vasquez. Plaintiff seeks injunctive relief requiring Defendant Vasquez to produce 4/30/21 arrest warrant

34. Defendant ADA Jean Prisco conspired with Defendants applying for warrant SEE Exhibit A Page 6. Defendant Jean Prisco signed off on Search warrant SEE Ex A page 6,

14 of 24

35. Defendant Assistant District Attorney Jean Prisco is being sued in her individual capacity for punitive and compensatory damages. Defendant Prisco is being sued in her official capacity for compensatory damages. Defendant Acted under color of State law at all times relevant to this complaint,

36. Plaintiff request $ 150,000 in punitive damages from Defendant Jean Prisco

37. Plaintiff request $ 20,000 in compensatory damages from Defendent Prisco

## Defenses

38. Defendant ADA Prisco is not entitled to the defense of absolute immunity. "the ~~immunity~~ Nature of a prosecutors immunity depends on the capacity in which the prosecutor acts at the time of the alleged misconduct. Actions taken as advocate enjoy absolute immunity, while actions taken as an investigator enjoy only qualified immunity" Zahrey V Coffey 221 F 3d 342 (2d Circuit). "A prosecutor should neither consider himself to be an advocate before he has probable cause to have anyone arrested" Buckley V Fitzsimmons 509 US 259. ADA Prisco applied for a search warrant which antedates April 30, 2021 indictment and grand jury presented evidence of clothing allegedly seized in search and does not state or disclose any evidence relating to cell phone or use of cell phone

15 of 26

SEE Grand jury Transcripts Ex (E) 31 pages. Plaintiff is not suing for the clothes delineated in search warrant applied for on April 7, 2021 or clothes seized during April 8, 2021 execution thereof plaintiff is suing ADA Defendant Jean Prisco for applying for search warrant on plaintiff's phone without probable cause or due process thereby conspiring with Defendants Swern, Vasquez, and John Doe NYPD officers to violate equal protection clause. ADA Prisco was not in the capacity of advocate because there was not probable cause to arrest plaintiff at the time April 7, 2021 when she applied for search warrant excluding the evidence of clothing thereby she is not entitled to absolute immunity.

39. Defendants John Doe NYPD officers are being sued in their individual capacities for punitive damages and compensatory damages. Defendants are being sued in their official capacity for compensatory damages. Defendants acted under color of state law.

40. Defendants John Doe NYPD officers violated plaintiff's fourth, fourteenth amendment by seizing plaintiff's cell phone without probable cause thereby conspired with Defendant Jean Prisco, Vasquez and Defendant Judge Swern to violate Equal protection Clause. SEE CPL 690.25 "Search warrants to whom addressable and by whom executable" states "A police officer to whom a search warrant is addressed may execute pursuant to its terms"

16 of 26

This means that John Doe NYPD officers scrutinized search warrant affidavit and was cognizant of the fact that the Probable Cause section ~~was~~ omitted any evidence relating to cell phone or use of cell phone and executed warrant in disregard of plaintiffs ~~rights~~ fourth amendment rights.

41. Plaintiff is not sure of how many officers were with Defendant Vasquez during April 8, 2021 execution of search warrant. Plaintiff is requesting punitive damages of $50,000 each against each officer who participated in April 8, 2021 search. Each John Doe Defendant NYPD officer.

42. Plaintiff is requesting $10,000 each in Compensatory damages against each John Doe NYPD Defendants who executed search.

<u>Supplemental State Claims</u>

43. Plaintiff invoking Supplemental State jurisdiction pursuant 28 USC 1367 is claiming that Defendants Swern, Prisco, Vasquez and John Doe NYPD Detectives. Violated Section 1 #12 "Security against unreasonable searches seizures and interceptions" and "Equal Protection of laws; discrimination in civil rights prohibited"

44. Plaintiff request $75,000 in punitive damages against Defendant Swern

17 of 26

for violating State law. $15,000 in compensatory damages for violating State law.

45. Plaintiff is requesting $40,000 in punitive damages from Defendant Vasquez and $11,000 in compensatory damages from Defendant Vasquez for violating State law.

46. Plaintiff request $40,000 in punitive damages from Defendant ADA Jean Prisco and $11,000 in compensatory damages for violating State law.

47. Plaintiff is requesting $20,000 in punitive damages and $5,000 in compensatory damages against Defendants John Doe NYPD officers for violating State law

48. The plaintiff is not alleging that the above named defendants in legal claims ~~as~~ did not violate the plaintiffs rights individually this lawsuit plaintiff is alleging that ~~plaintiff~~ defendants violated his rights as individuals and also plausibly conspired to do so.

## Supplemental facts

49. ~~A~~ After Defendants Bryant and John Doe OSI investigators dropped

18 of 26

plaintiff off at OBCC Rikers on 8/17/21 plaintiff had parole revocation hearing that was scheduled for August 27, 2021 at which he attended which was adjourned for continuation on until August 31, 2021 SEE Ex C.

50. At 8/31/21 hearing Administrative Judge ordered A CPL 730 exam to be conducted.

51. Defendants John Doe Warden, ▓▓ Deputy of Security, and Deputy of Administration OBCC Rikers failed to call plaintiff or schedule plaintiff to have 730 exam conducted before 9/14/21 Supreme Court force order for arrest/warrant and 9/23/21 Supreme Court arraignment. Defendants failed to inform ADA Defendant Prisco and Defendant Judge Farber on 9/1/21, 9/10/21 and 9/14/21 that parole ordered CPL 730 exam,

## Legal Claims Continued

52. Defendants Frank Bryant and John Doe OSI investigators are being sued in their individual capacities for punitive damages and compensatory damages. Defendants are being sued in their official capacity for compensatory damages. Defendants acted under color of State law at all times relevant to complaint. ▓▓ Defendants are "Office of Special Investigations investigators" (NYDOCCS).

~~53. Defendants John Doe and Bryant were delegated to execute 730 exam~~

19 of 26

53. Defendants Bryant and John Doe (OSI) conspired with defendants Swern, Vasquez, Prisco and NYPD Defendants when they seized plaintiff 's phone ~~████~~ that was vouchered in Virginia (SEE Ex B) Defendants Delegated to execute warrant of arrest

## Supplemental facts / legal claims

54. Plaintiffs Parole officer ~~issued~~ April 8, 2021 Absconder warrant after ~~█~~ requesting for issuance on April 6, 2021 "SEE Parole violation of release report" Exhibit (G) 8 pages, ~~████~~ Defendants Vasquez, ~~█~~ Prisco amended the Affidavit after parole issued Absconder warrant and applied ~~████████~~ Search warrant as warrant for arrest issued by parole because the police have authority to execute parole warrants. Defendants Bryant and Doe (OSI) delageted 4/30/21 ~~█~~ to execute arrest warrant ~~██~~ to same extent as (CPL 210.10(6)) states delagating is and seized plaintiff's phone inviolation of fourth, fourteenth amendment, and equal protection of laws for his custodial states as parolee & individual rights.

55. Defendants violated Due process and ~~████████████~~ fourth amendment rights because Only parole and probation officers have authority pursuant CPL 120.55 to execute warrants for arrest.

56. ~~██~~ Defendants Bryant and Doe ~~████~~ are being sued for $32,000

20 of 26

each in punitive damages ~~xxxxx~~ Defendants are being Sued for $5,000 each in compensatory damages.

57. Defendants John Doe Warden, Deputy of Administration, Deputy of Security, Captain, and Officers (OBCC Rikers NYCDOC). Conspired with Defendants to violate fourteenth amendment due process and fourth amendment rights when After 730 exam was ordered at 8/31/21 parole hearing Defendant's were aware that they had to ~~xxxxx~~ CPL 730 examination pursuant to its terms defendants failed to take plaintiff to designated place to allow exam to be conducted. Instead Defendants Kept telling plaintiff he has arrest warrant from 9/1/21 to 9/14/21 Defendant Judge Farber issued force order authorizing OBCC Rikers to bring plaintiff to court when Defendants NYCDOC's do not have authority to execute arrest warrant SEE People V Small 26 NY3d 253.                    Supplementary Facts/Legal claims

58. On February 22, 2022 plaintiff filed State Habeas Corpus in "Affirmation in opposition to Habeas Corpus" Ex(H) ADA states DA's office attempted to produce plaintiff to court for 4/30/21 indictment ~~xxxx~~ on 9/1/21 and 9/10/21 but plaintiff refused to be produced" SEE Page 3 Ex H. Defendant ADA Jean Prisco conspired with NYCDOC's Defendants to violate fourth, fourteenth amendment and equal protection of laws when asked Defendants OBCC John Doe's Warden, Deputy of Security and Deputy of Administration to

21 of 26

arrest plaintiff and bring him to court instead of contacting officers from NYPD
Defendant Vasquez to execute warrant. Defendants Warden, Dep of
Administration and Security after learning that ADA Defendant Prisco
wanted them to act in capacity of police officers created unconstitutional
policy asking their subordinates to execute warrant for arrest "Correction
Officers are peace officers within the means of CPL 1.20(33) and CPL
2.10(25) and only police officers may execute arrest warrants" People V
Small. SEE Poe V Leonard 282 F 3d 123 (2d Circuit) "Defining Supervisor
deliberate indifference with respect to his subordinates actions as occurring when
a supervisor fails to act on information indicating unconstitutional acts were occurring"
Defendants were deliberately indifferent and grossly negligent to plaintiff's rights
by failing to inform ~~the~~ Supreme Court or DA's office that parole ordered
730 exam to be conducted before 9/14/21 force order and 9/23/21 arraignment.
Defendants John Doe Captain, and John Doe officers violated fourth and
fourteenth amendment, equal protection of laws acting in capacity as police
officers executing 9/14/21 force order because Defendants Supervisors created
unconstitutional policy. SEE Williams V Smith 781 F 2d 319 "A supervisory official
may be personally liable if he or she was grossly negligent in managing subordinates
who caused the unlawful condition or event." (2d circuit 1986). Without
warrant for arrest or if the police are not on Rikers to arrest plaintiff
he can refuse to go with Defendants. Defendant Judge Farber acted in
clear absence of jurisdiction ordering Defendants to execute arrest warrant

22 of 26

as parole officers because of unconstitutional policies ■ colleagues and subordinates Defendants passed because parole officers can execute arrest warrants pursuant CPL 120.55. This is why the plaintiff is requesting ~~the court~~ Defendents Farber to produce arrest warrant from 4/30/21 to prove that he did not issue force order because of 4/8/21 Absconder warrent issued by parole. Defendant Farber cannot order parole to arrest someone without NYPD.

59. Defendant Farber violated plaintiff's fourth, fourteenth amendments, and Equal Protection of laws rights when he denied his motion from Defense Counsel Glenn Hardy to controvert Cell phone Search and Seizure on May 2, 2022.

60. Defendants John Doe's Warden, Deputy of Security, Administration, Captain, officers NYDOC'S are being sued in their individual capacity for punitive damages, ■ compensatory damages. Defendants are being sued in their ~~official capacity~~ Official capacity for injunction and declaratory relief. ~~[illegible crossed out text]~~ Defendants acted under Color of State law, Defendants are NYCDOC employees.

61. Defendant's John Doe's Warden, Deputy of Administration, Deputy of Security are being sued for $50,000 each in punitive Damages

23 of 26

62. Defendants John Doe Warden, Deputy of Security, Deputy of Administration are being sued for injunctive relief. Plaintiff is requesting that NYC DOC to prohibit the unconstitutional practice of allowing its employees to execute arrest warrants. Plaintiff is requesting court to denounce this policy, because only police can execute arrest warrants.

63. Plaintiff is seeking declaratory judgment stating that NYC Doc's Defendants created unconstitutional policy ~~mistake~~ by allowing their officers to execute arrest warrants.

64. Defendants John Doe Captain, and Officers are being sued for $30,000 each in punitive damages.

65. Defendant Judge Curtis Farber is being sued for $50,000 in punitive damages.

66. Plaintiff is request a Declaratory Judgment stating that Judge Farber cannot pass unconstitutional law of allowing NYC DOC to execute arrest warrants and that this was illegal.

67. Plaintiff asks for injunctive relief to forbid/prohibit Defendant Judge

24 of 26

from issuing force orders allowing New York city Corrections (NYCDOC)
to execute arrest warrants.

## Supplemental State law Claims

68. Defendants John Doe's Warden, Deputy of Administration, Deputy
of Security violated NY State Constitution Art 1 § 12 "Security against
unlawful searches and seizures" and Art 1 § 11 "Equal protection of
laws discrimination in civil rights prohibited"

69. Plaintiff request $ 22,000 from each Defendant Warden, Deps of
Security and administration punitive damages,

70. Plaintiffs seeks injunctive relief for state law violations prohibiting
NYC Docs from maintaining policy at which authorizes NYC Doc's employees
who are not police officers to execute arrest warrants

71. Plaintiff seeks declaratory relief stating Defendants Warden, Deps
of Security & Administration violated state law creating police authorizing
their employees to execute arrest warrants.

72. Defendant Judge Farber violated NY Const Art 1 § 11 and Art 7 §

25 of 26

12. ~~~~

73. Plaintiff request $25,000 from Defendant Farber in punitive Damages for violating State law, and injunctive relief requiring Defendant Farber to Produce 4/30/21 ~~~~ arrest warrant.

74. Plaintiff seeks injunctive relief prohibiting Defendant Farber from authorizing NYCDOC ~~~~ who are not police or parole officers to execute arrest warrants under State law. Plaintiff request Defendant to produce copy of disposition of 2/6/22 motion to controvert search & seizure.

75. Plaintiff seeks declaratory judgment stating Defendant Farber ~~~~ violated State law authorizing NYCDocs to execute warrant for arrest.

76. Defendants John Doe Captain, John Doe Correction officers are being sued for $15,000 each for violating State laws.

77.                          injuries

   Plaintiffs request for Compensatory Damages stem from seizure of property Such as NY State Social Security Card, NY State ID, Credit Cards and Samsung Galaxy phone SEE Exhibit B and phone that was seized in April 8, 2021 search warrant. SEE Thompson V Carter 284 F 3d 411

26 of 26

" 42 USC 1997e does not bar compensatory damages for loss of property provided prisoner can establish actual injury." Injuries for Identification documents such as Social, credit cards, ID and phones items of intangible sentimental intricate value the Social Security card Defendants Stole plaintiff had his entire life. The irretrievable contacts such as business and casual acquaintances some from potential employers in plaintiff's phone. Family pictures in phone. Credit/Debit cards which plaintiff could've used to send money to his family and Apply for power of attorney which was difficult without NY State ID. Seizure of these documents cause injuries not essential to the Constitutional injuries at which punitive damages are awarded. Injuries such as ~~xxxxx~~ ~~xxxxxxxxxxxxxxx~~, Property Equity, Emotional distress, mental anguish. Punitive damage award for injuries for constitutional violations Thompson V Carter.

## Exhibits / Defendants

Exhibit A "Amendment Affidavit Search warrant 10 pages

Exhibit B "Property inventory Voucher" 1 page

Ex C "Notice of Violation" 1 page

Ex E "Grand jury transcripts" 31 pages

Ex F "Motion to controvert" 15 pages 36 paragraphs

Ex G "Parole violation release report" 8 pages

Ex H "Affirmation in opposition to Habeas Corpus" 5 pages

### Defendants

Warden OBCC Rikers, Deputy of Security OBCC, Deputy of Administration OBCC, Captain OBCC, John Doe officers OBCC, Judge Anne Swern, Detective Brengie Vasquez NYPD, Frank Bryant and John Doe OSI investigators, ADA Jean Prisco, Judge Curtis Farber John Does NYPD officers

3B

12 Defendants   Facts / legal claims

26 pages
attached

Defendant # 9

Warden OBCC Rikers
1600 Hazen Street
East Elmhurst, NY 11370

Defendant # 10

Deputy of Security OBCC Rikers
1600 Hazen Street
East Elmhurst, NY 11370

Deputy of Administration OBCC Rikers    Defendant # 11
1600 Hazen Street
East Elmhurst, NY 11370

Defendant # 12

John Doe Captain OBCC Rikers
1600 Hazen Street
East Elmhurst, NY 11370

John Doe officers OBCC Rikers
1600 Hazen Street
East Elmhurst, NY 11370



CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK, STATE OF NEW YORK

IN THE MATTER OF AN APPLICATION FOR A

WARRANT TO SEARCH

152 WEST 118TH STREET, APT. 5 E, NEW YORK, NEW YORK

("THE TARGET PREMISES")

## AMENDED AFFIDAVIT IN SUPPORT OF
## SEARCH WARRANT

Police Officer Brengie Vasquez Shield # 11169, of the 28th Precinct of the New York City Police Department ("NYPD"), being duly sworn, deposes and says:

1.     I am a Police Officer assigned to the 28th Precinct Detective Squad and as such I am a public servant of the kind specified in CPL 690.05(1).  I have been a police officer with NYPD for approximately eleven years and have participated multiple assault investigations as well as multiple search warrant executions.

2.     This affidavit is submitted in support of an application for a warrant to search 152 West 118th Street, Apt. 5 E, New York, New York ("THE TARGET PREMISES"), where there is reasonable cause to believe that evidence of the commission of the crime of assault in the second degree (Penal Law § 120.05 (12)), may be found in the form of the following property:

a.  Clothing, specifically blue pants, a blue denim jacket, a multicolored sweater, a hat and white sneakers;

b.  Photographs depicting any of the above-listed items of clothing;

c.  Cellular telephones, mobile devices, cameras, video-recorders and other electronic devices and/or equipment capable of storing data, information and images and their components and accessories, including but not limited to wires, cords, monitors, software, hard drives and charges, belonging to or possessed by KAZZIM COOPER;

d.  Books, manuals, guides or other documents containing information about the operation and ownership of a cellular telephone, mobile device, camera, video recorder or other electronic storage device present in THE TARGET PREMISES, including but not limited to cellular telephone and software user manuals;

e.  evidence of ownership and use of THE TARGET PREMISES, or the use of property located therein by any person, including but not limited to keys, telephone bills, utility bills, bank statements, leases, deeds, or rent receipts related to THE TARGET PREMISES or

8563990

other real property, mail addressed to or from THE TARGET PREMISES, or other documents bearing the address of THE TARGET PREMISES, identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal papers, driver's licenses, vehicle registration, vehicle insurance documents, vehicle repair documents, videotapes and photographs of persons.

3. With respect to the seizure and search of cellular telephones, mobile devices, cameras, video recorders and other electronic devices and/or equipment capable of storing the above described property in addition to searching for the items described above in Paragraph 2, it is requested that authorization be granted to search these devices for the items detailed below, the searches to be restricted in time period where appropriate according to the nature of the item for which the search is authorized, as noted below:

a. Messages, posts, communications, pictures, videos, computer generated images or other images or records portraying, recording, describing or depicting or otherwise referring to, or suggesting participation in, the assault described in paragraph 7 of this affidavit, namely: the unprovoked assault of a 75-year old woman on the sidewalk in front of 168 Lenox Avenue in New York County on April 4, 2021 at approximately 3:00 p.m.;

b. Messages, posts, communications, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting, a motive for the assault described in paragraph a, above;

c. Messages, posts, communications, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting, an intent to commit the assault described in paragraph a, above;

d. Messages, posts, communications, pictures, videos, friend list content, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to the assault described in paragraph a, above;

e. Messages, posts, communications, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting, the whereabouts of the user of the device being searched on or about April 4, 2021;

f. Messages, posts, communications, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting, KAZZIM COOPER'S ownership of the items set forth in paragraph 2(a)-(e) above;

g. Messages, posts, text communications, other communications, call detail, voicemails, internet searches, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting, a connection between the user of the device being searched and the vicinity of 168 Lenox Avenue in New York County, or the user's familiarity with that location;

2

8563990

h. Messages, posts, text communications, other communications, call detail, voicemails, internet searches, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting, a connection among KAZZIM COOPER and the assault enumerated in paragraph 3(a);

i. Messages, posts, communications, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting the user/owner of the device being searched, as well as that user's/owner's access to the account and ability to post information to the account, to the extent applicable.

4. It is also requested for evidentiary purposes that this Court grant authorization for law enforcement personnel to videotape and photograph the interior of TARGET PREMISES.

5. With respect to the stored electronic data, information and images contained in computers and other electronic devices described above and/or their components and accessories, it is also requested that this Court grant permission to retrieve the above-described data, information, and images, and print them or otherwise reproduce them by converting them or copying them into storage in another device.

6. As set forth below, there is reasonable cause to believe the above described property constitutes evidence of a crime, tends to demonstrate that a crime was committed, or that a particular person participated in the commission of a crime, specifically Assault in the Second Degree (Penal Law § 120.05 (12)).

## FACTUAL BACKGROUND AND PROBABLE CAUSE

7. The following facts are based upon information supplied to me by other individuals involved in this investigation, my conversations with members of the New York City Police Department who are familiar with this investigation, my review of relevant surveillance video, my conversations with the complaining witness, my review of documents related to this investigation, and other sources as specified, as well as my own recollections and inferences I have drawn from all such information. It does not, however, include all of the information known to me with respect to this investigation, but only the information that is necessary to establish the requisite probable cause.

a. I am informed by the complaining witness, a 75-year-old woman known to the District Attorney's Office, that on April 4, 2021 at approximately 3 p.m., she was walking on the sidewalk in front of 168 Lenox Avenue in New York County when an unknown male approached her and punched her once in the face, without saying anything to her. The complaining witness fell to the ground and experienced swelling, bruising and substantial pain as a result of the attack.

b. I have reviewed surveillance video recorded in the vicinity of 168 Lenox Avenue in New York County from April 4, 2021 at approximately 3:00 p.m. and observed a black male wearing a denim jacket, blue jeans, a hat and white sneakers (Exhibit 1), approach the complaining witness.

8563990

*Exhibit 1*



c. I observed the male approach the complaining witness and punch her in the face. The force of the blow caused the woman to fall to the ground, at which point the suspect walked away, towards West 118th Street.

d. I reviewed surveillance video from West 118th Street, which revealed that immediately after the attack, the suspect entered an apartment building located at 152 West 118th Street in New York County;

e. I reviewed surveillance video from inside 152 West 118th Street, which showed the suspect walk from the lobby towards a stairwell, where he walked up the stairs. In between the fourth and fifth floors, the suspect removed the jacket and was wearing a multicolored sweater. He then proceeded to the fifth floor, where he unlocked the door to Apartment 5E and entered the apartment.

f. I also reviewed surveillance video recorded from 152 West 118th Street just prior to the attack, and observed that, at approximately 2:30 pm, the suspect exited Apartment 5E, left

8563990

the apartment building and walked towards Lenox Avenue, where he then assaulted the complaining witness.

8. On April 5, 2021, at approximately 7:15 p.m., I entered 152 West 118th Street, and went to the fifth floor. I observed that the exterior apartment door to Apartment 5E has "5E" displayed in the middle of the door.

9. On April 6, 2021, I showed Detective Isaac Moultry, of the 24th precinct, the surveillance video from the assault and the time period around the assault, as well as still photographs from the surveillance video. Detective Moultry informed me that he recognized the suspect to be Kazzim Cooper (DOB 10/15/1986), having arrested Cooper on January 8, 2021.

10. On April 6, 2021, I submitted an affidavit in support of a search warrant for the target premises, which was authorized by the Honorable Anne E. Swern. Said search warrant is attached hereto and incorporated herein. In said search warrant, I set forth that Kazzim Cooper's parole officer, Libby Black, had visited Cooper in his home, THE TARGET PREMISES, on April 6, 2021. This morning, I again spoke again with Parole Officer Black, who clarified that she last observed Cooper in THE TARGET PREMISES on April 1, 2021. On April 6, 2021, Parole Officer Black spoke to Cooper's mother, who also resides at THE TARGET PREMISES, and was informed by Cooper's mother that he was home at the time.

## CONCLUSION

11. As indicated above, in addition to the specified clothing and footwear, I am seeking to seize and remove from THE TARGET PREMISES: cellular telephones, mobile devices, cameras, video-recorders, and other electronic devices capable of storing data, information and images.

12. Because such devices are readily capable of storing data, information and images, it is reasonable to believe that any such devices may contain evidence of the crimes under investigation and sought by this warrant application. Neither I, nor my fellow officers assigned to my unit, have the training and expertise in forensic computer analysis to conduct a thorough and complete forensic search of computers, cellular telephones and/or other electronic storage devices. I am therefore requesting that the Court authorize the New York County District Attorney's Office Cyber Crime and Identity Theft Unit and/or the New York City Police Department Computer Crimes Squad to assist me in accessing, downloading, retrieving, printing, copying or otherwise seizing the computerized and electronic evidence described above from any devices seized.

WHEREFORE, deponent respectfully requests that the court issue a warrant and order of seizure in the form annexed authorizing a search of THE TARGET PREMISES, for the above described property; and directing that if such property is found, it be brought before the Court.

It is also requested that the Court authorize the seizure of cellular telephones, mobile devices, and/or other electronic storage devices as described above for the purpose of conducting an off-site search for the evidence described. In addition, it is also requested that this Court grant permission to retrieve the above-described data, information, and images, and print them or otherwise reproduce them by converting them or copying them into storage in another device.

8563990

It is also requested that the Court authorize that, for purposes of the requirement that a search warrant be executed within ten days as mandated by CPL Section 690.30(1), that with respect to any computers, cellular telephones, and other electronic storage devices, the warrant be deemed executed at the time that said devices are seized and removed from THE TARGET PREMISES, and that the search of said devices may continue thereafter for whatever reasonable time is necessary to complete a thorough search pursuant to this warrant. Once said computers and other devices are seized pursuant to the warrant, the data, information and images contained therein will not change, and thus no greater intrusion will result from a thorough search being conducted within a reasonable time.

It is also requested that the Court authorize a search of all files and data stored in computers, cellular telephones, and other electronic storage devices, irrespective of how the data is filed, labeled, designated, encrypted, hidden, disguised or otherwise stored.

It is also requested that the Court authorize forensic computer analysts assigned to the New York County District Attorney's Office Cyber Crime and Identity Theft Unit and/or the New York City Police Department Computer Crimes Squad to assist me, as deemed necessary by law enforcement officials, in accessing, downloading, retrieving, printing, copying and otherwise seizing the computerized information and electronic evidence described above from any devices seized.

It is requested that this affidavit and any transcript of any accompanying sworn testimony in support of this application be sealed, except that permission be granted for an assistant district attorney in the New York County District Attorney's Office to obtain a copy of any such sworn testimony and that permission be granted for an assistant district attorney in the New York County District Attorney's office to disclose the affidavit and/or accompanying sworn testimony in the course of the lawful discharge of his or her duties pursuant to a criminal investigation and/or prosecution, or upon written order of the Court.

No previous application has been made in this matter to any other Judge, Justice, or Magistrate.

Police Officer Brengie Vasquez, Shield # 11169
28th Precinct Detective Squad


APPROVED: _____
Jean Frisco
Assistant District Attorney


Sworn to before me this
April ___, 2021

_____
Judge of the Criminal Court of the City of New York

6

8563990

# AMENDED SEARCH WARRANT

COUNTY COURT OF THE STATE OF NEW YORK
STATE OF NEW YORK

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK
TO ANY POLICE OFFICER OF THE CITY OF NEW YORK

       Proof by affidavit having been made this day before me by Police Officer Brengie Vasquez, Shield # 11169, of the 28th Precinct of the New York City Police Department that there is reasonable cause to believe that certain property, to wit:

    a.  Clothing, specifically blue pants, a blue denim jacket, a multicolored sweater, a hat and white sneakers,

    b.  Photographs depicting any of the above-listed items of clothing

    c.  Cellular telephones, mobile devices, cameras, video-recorders and other electronic devices and/or equipment capable of storing data, information and images and their components and accessories, including but not limited to wires, cords, monitors, software, hard drives and charges, belonging to or possessed by KAZZIM COOPER;

    d.  Books, manuals, guides or other documents containing information about the operation and ownership of a cellular telephone, mobile device, camera, video recorder or other electronic storage device present in THE TARGET PREMISES, including but not limited to cellular telephone and software user manuals;

    e.  evidence of ownership and use of THE TARGET PREMISES, or the use of property located therein by any person, including but not limited to keys, telephone bills, utility bills, bank statements, leases, deeds, or rent receipts related to THE TARGET PREMISES or other real property, mail addressed to or from THE TARGET PREMISES, or other documents bearing the address of THE TARGET PREMISES, identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal papers, driver's licenses, vehicle registration, vehicle insurance documents, vehicle repair documents, videotapes and photographs of persons.

may be found in 152 West 118th Street, Apt. 5E, New York, New York ("THE TARGET PREMISES"); and has been used or is possessed for purpose of being used to commit or conceal the commission of the crime Assault in the Second Degree (Penal Law §120.05 (12)); and constitutes

7

8563990

evidence of said crime, tends to demonstrate that said crime was committed, or that a particular person participated in the commission of said crime.

YOU ARE THEREFORE COMMANDED, to enter and to search THE TARGET PREMISES, for the above described property, and if you find such property or any part thereof to bring it before the Court without unnecessary delay.

FURTHER, this Court authorizes the seizure of cellular telephones, mobile devices, and/or other electronic storage devices, as described above, for the purpose of conducting an off-site search for the evidence described, and authorizes that the above-described data, information, and images, may be retrieved and printed or otherwise reproduced by converting or copying the data, information and images into storage in another device;

FURTHER, with respect to the seizure and search of cellular telephones, mobile devices, cameras, video recorders and other electronic devices and/or equipment capable of storing property sought by this warrant, this Court authorizes the search of these devices for said property and for the items detailed below, the searches to be restricted in time period where appropriate according to the nature of the item for which the search is authorized, as noted below:

a. Messages, posts, communications, pictures, videos, computer generated images or other images or records portraying, recording, describing or depicting or otherwise referring to, or suggesting participation in, assault described in paragraph 7 of this affidavit, namely: the unprovoked assault of a 75-year old woman on the sidewalk in front of 168 Lenox Avenue in New York County on April 4, 2021 at approximately 3:00 p.m.;

b. Messages, posts, communications, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting, a motive for the assault described in paragraph a, above;

c. Messages, posts, communications, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting, an intent to commit the assault described in paragraph a, above;

d. Messages, posts, communications, pictures, videos, friend list content, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to the assault described in paragraph a, above;

e. Messages, posts, communications, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting, the whereabouts of the user of the device being searched on or about April 4, 2021;

f. Messages, posts, communications, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting, KAZZIM COOPER'S ownership of the items set forth in paragraph 2(a)-(c) above;

8

85639911

g. Messages, posts, text communications, other communications, call detail, voicemails, internet searches, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting, a connection between the user of the device being searched and the vicinity of 168 Lenox Avenue in New York County, or the user's familiarity with that location;

h. Messages, posts, text communications, other communications, call detail, voicemails, internet searches, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting, a connection among KAZZIM COOPER and the assault enumerated in paragraph 3(a);

i. Messages, posts, communications, pictures, videos, computer generated images or other images or records portraying, recording, describing, depicting, or otherwise identifying, referring to, or suggesting the user/owner of the device being searched, as well as that user's/owner's access to the account and ability to post information to the account, to the extent applicable.

FURTHER, this Court authorizes that, with respect to any computers, cellular telephones, and other electronic storage devices, as described above, for purposes of the requirement that a search warrant be executed within ten days as mandated by CPL Section 690.30(1), this warrant will be deemed executed at the time that said devices are seized and removed from THE TARGET PREMISES, and that the search of said devices may continue thereafter for whatever reasonable time is necessary to complete a thorough search pursuant to the warrant;

FURTHER, this Court authorizes a search of all files and data stored in cellular telephones, mobile devices, and other electronic storage devices, as described above, irrespective of how the data is filed, labeled, designated, encrypted, hidden, disguised or otherwise stored;

FURTHER, this Court authorizes forensic computer analysts assigned to the New York County District Attorney's Office Cyber Crime and Identity Theft Unit and/or the New York City Police Department Computer Crimes Squad to assist, as deemed necessary by law enforcement officials, in accessing, downloading, retrieving, printing, copying and otherwise seizing data, information and images from cellular telephones, mobile devices, and other seized electronic storage devices as described above.

IT IS FURTHER ORDERED that the affidavit and any transcript of any accompanying sworn testimony in support of the application for this warrant is sealed, except that a copy of any such sworn testimony may be obtained by an assistant district attorney in the New York County District Attorney's Office and the affidavit and/or any such sworn testimony may be disclosed by an assistant district attorney in the New York County District Attorney's Office in the course of the lawful discharge of his or her duties pursuant to a criminal investigation and/or prosecution, or upon written order of the Court.

YOU ARE THEREFORE COMMANDED, between 6:00 a.m. and 9:00 p.m., to enter and to search THE TARGET PREMISES, for the above described property, and if you find such property or any part thereof to bring it before the Court without unnecessary delay.

8563990

IT IS FURTHER ORDERED that the affidavit and any transcript of any accompanying sworn testimony in support of the application for this warrant is sealed, except that a copy of any such sworn testimony may be obtained by an assistant district attorney in the New York County District Attorney's Office and the affidavit and/or any such sworn testimony may be disclosed by an assistant district attorney in the New York County District Attorney's Office in the course of the lawful discharge of his or her duties pursuant to a criminal investigation and/or prosecution, or upon written order of the Court.

This warrant must be executed within 10 days of the date of issuance.

_____
Judge of the Criminal Court
of the City of New York

Dated: New York, New York

_____

10

8563990

# SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

IN THE MATTER OF AN APPLICATION FOR A

WARRANT TO SEARCH

152 WEST 118TH STREET, APT. 5 E, NEW YORK, NEW YORK ("THE TARGET

PREMISES")

### SEARCH WARRANT

Cyrus R. Vance, Jr.
District Attorney
New York County
One Hogan Place
New York, New York 10013
(212) 335-9000

Ex A

Search Warrent

10 pages

ExB



# Inmate Property Inventory Report



**Print Date/Time:** 07/22/2021 05:21
**Login ID:** acg\fadjei

**Inmate:** COOPER, KAAZIM

Arlington County Sheriff's Office
**ORI Number:** VA0070000

**Booking Number:** 2021-00002699

## Possessions

| Possession | Condition | Quantity | Location | Container | Bag # |
|---|---|---|---|---|---|
| Credit Cards | | 1 | Property Room | BIN 011 | B011 H003 |
| **Description:** | MC 2128, VISA 6873 | | | | |
| Currency Transfer | | 1 | Property Room | BIN 011 | B011 H003 |
| **Description:** | $14.95 | | | | |
| Hat/Cap | | 1 | Property Room | BIN 011 | B011 H003 |
| **Description:** | | | | | |
| Identification | | 1 | Property Room | BIN 011 | B011 H003 |
| **Description:** | NY ID, SSN CARD | | | | |
| Miscellaneous Cards | | 1 | Property Room | BIN 011 | B011 H003 |
| **Description:** | | | | | |
| Miscellaneous Papers | | 1 | Property Room | BIN 011 | B011 H003 |
| **Description:** | | | | | |
| Phone | Damaged | 1 | Property Room | BIN 011 | B011 H003 |
| **Description:** | USED | | | | |
| Shoelaces | | 2 | Property Room | BIN 011 | B011 H003 |
| **Description:** | | | | | |
| Wallet | | 1 | Property Room | BIN 011 | B011 H003 |
| **Description:** | | | | | |

## Issued Items

| Item | Condition | Size | Color | Quantity | Issued By |
|---|---|---|---|---|---|
| | | | | | |

This certifies that the above items are correct.

Officer: _____     Date: _____

Inmate: _____     Date: _____

Ex B

Property Receipt

1 page

Ex 4

FORM 9011CS (10/11)

**STATE OF NEW YORK**
**DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION**
**NOTICE OF VIOLATION**

TO: _COOPER, KAZZIM_     INST. #: _15A3590_

WARRANT #: _839282_     NYSID #: _5443349K_

You are charged with violating the conditions of your release in the manner specified on the attached violation of release report.

A preliminary hearing on these charges has been scheduled on _8/27/21_ at _9:50 PM_ at _RITC_
Date     Time     Place

Should you waive a preliminary hearing or should probable cause be found at this hearing that you have violated the condition of your release in an important respect, a

final hearing on these charges will be held on _10/01/21_ at _9:30_ at _RITC_
Date     Time     Place

In the event that your return to the State of New York cannot be effected for the hearing as scheduled above due to circumstances beyond the Department's control, you will be afforded a preliminary hearing and final revocation hearing at such time as you may become available for return on the Department's warrant.

You have the right to a preliminary and final violation hearing. A preliminary hearing may be held to determine whether there is probable cause to believe that you violated one or more of the conditions of your release in an important respect. At this hearing you are entitled to appear and speak on your own behalf; introduce letters and documents; present witnesses who can give relevant information; and confront and cross-examine adverse witnesses. Proof of your conviction of a crime committed after your release shall constitute probable cause for the purpose of the preliminary hearing. You may be represented by counsel. It is your responsibility to obtain counsel. Your waiver of this preliminary hearing is equivalent to a finding of probable cause.

In the event that you are convicted of either a misdemeanor or a felony committed while under community supervision and a preliminary hearing has not been completed, you will not be entitled to the preliminary hearing on the basis of the new conviction. Any preliminary hearing which may have been scheduled may therefore be cancelled upon your conviction for such misdemeanor or felony.

Following the establishment of probable cause, the Board of Parole or its designee will review your case and may order that you be held for a final revocation hearing.

At the final revocation hearing, the presiding officer will determine whether there is a preponderance of evidence to support each of the charged violations. At this hearing, you have a right to be represented by counsel; to speak on your own behalf; have the right to introduce letters and documents; present witnesses who can give relevant information; and confront and cross-examine adverse witnesses against you. At this hearing, you also have the right to present mitigating evidence relevant to your restoration to community supervision.

In the event that you are convicted of a felony committed while under community supervision and you receive a new indeterminate or determinate sentence, any final revocation hearing which has been scheduled for you may be cancelled. In such instances, the Board of Parole may issue a final declaration of delinquency based upon that conviction and sentence.

In the event the Board of Parole issues a final declaration of delinquency, you will be served a copy of that determination together with a copy of the commitment.

Should you be convicted of a crime committed after your release, it is the intention of the Department of Corrections and Community Supervision to introduce evidence of your conviction at the time of your revocation hearing.

A request to adjourn either scheduled hearing should be made in the case of a preliminary hearing, at least three (3) days, and in the case of a final hearing, at least seven (7) days prior to the hearing, in writing, to the local area office. Requests for adjournments made at the hearing will only be granted for good cause shown.

Violation of Release Report received:

_Kazzim Ward_     _8/17/21_
Signature     Date

All persons charged with a violation of parole are required to be present at all proceedings regarding that violation of community supervision which are authorized by the Board of Parole. Any voluntary failure on your part to be present at any of theses proceedings may result in a finding that your failure to appear was a voluntary, knowing and intelligent waiver of your right to appear. Should such a finding be made, a hearing in absentia can be held and a final determination can be made regarding the charges pending against you, including, if necessary, a time assessment because of the violation of community supervision.

☑ I DO wish to have a preliminary hearing.     ☐ I do NOT wish to have a preliminary hearing.

_8/10/21_     _Kazzim Ward_
Date     Signature of Releasee

_8/17/21_     _T. Guy_
Date     Signature of Witness

If you cannot afford an attorney and wish to have counsel at your preliminary hearing, sign and detach this form. It is your responsibility to mail the form to the address shown on the form. If you request assigned counsel at your preliminary hearing, you must mail this form IMMEDIATELY.

NOW TO: _LEGAL AID SOCIETY_     RE: _COOPER KAZZIM_
_199 WATER STREET 5Fl_     Name
_NEW YORK NY 10068_     WARRANT #: _839282_

I am an alleged community supervision violator being held at: _____

I am scheduled for a preliminary hearing to be held on _8/27/21_ at _9:30_ at _R.I.T.C_
Date     Time     Place

I have waived my preliminary hearing. A final hearing has been scheduled for _10/01/21_
Date

at _9:30_ at _R.I.T.C_
Time     Place

I cannot afford an attorney and request that I be assigned counsel.

_No P.B No Aids_     _Kazzim Ward_

Ex C

Notice of violation

1 page

Ex E

1

1    SUPREME COURT OF THE STATE OF NEW YORK

2    GRAND JURY OF THE COUNTY OF NEW YORK

3    ---------------------------------------------

4    PEOPLE OF THE STATE OF NEW YORK

5

6                          VS

7

8    KAZZIM CCOPER

9    ---------------------------------------------

10                        NEW YORK, NEW YORK

11                        APRIL 27, 2021

12

13   BEFORE:

14            A QUORUM OF THE SECOND APRIL/MAY

15            2021 GRAND JURY

16

17

18   PRESENTED BY:

19            JEAN PRISCO, ESQ.,

20                 ASSISTANT DISTRICT ATTORNEY

21

22

23

24                        KATHERINE SPITZBARTH

25                        GRAND JURY REPORTER

2

1          MS. PRISCO:  Good afternoon.  My

2     name is Jean Prisco.  Today I'll be

3     presenting evidence in the case of the

4     People of the State of New York versus

5     Kazzim Cooper.  At the conclusion of my

6     presentation I'll ask you to consider one

7     count of assault in the second degree,

8     under the theory that on April 4, 2021,

9     at approximately 3:00 p.m., in the

10    vicinity of 168 West 119th Street, in

11    Manhattan, Kazzim Cooper who is

12    approximately 34 years old, with intent

13    to cause injury to a person who is 65

14    years of age or older, caused such injury

15    to such person.

16          Today you'll be hearing from three

17    witnesses.  The first one is Detective

18    Brengie Vasquez.

19

20

21

22

23

24

25

KS

Vasquez

```
 1
 2              MS. PRISCO:  Good afternoon.  Tell
 3         us your name.
 4              THE WARDEN:  Swear in the witness.
 5    B R E N G I E                V A S Q U E Z,
 6              called as a witness, having been first
 7              duly sworn, responded to the oath and
 8              testified as follows:
 9              THE WITNESS:  I do so.
10    BY MS. PRISCO:
11         Q.    Now tell us your name, shield and
12    command.
13         A.    Officer Vasquez.  Shield 11169,
14    28th Precinct Detective Squad.
15         Q.    Thank you.  Going to draw your
16    attention to April 4, 2021, at approximately
17    3:30 p.m.; did you have an occasion to respond
18    to an incident that occurred in the vicinity of
19    168 West 119th Street, in New York County?
20         A.    Yes.
21         Q.    Tell us what, if anything, you
22    observed there?
23         A.    There was an RMP NYPD car with two
24    officers and a civilian inside the vehicle,
25    older woman.
```

4

Vasquez

1      Q.    And what, if any, observations did

2   you make of the older woman in the police

3   vehicle?

4      A.    She had a mark on her, little cut

5   over her lip and she was shaking and nervous.

6   Blood in her mouth as well.

7      Q.    Did you determine at that time that

8   this was an assault investigation?

9      A.    Yes.

10      Q.    Was this, in fact, your

11   investigation?

12      A.    Yes.

13      Q.    In furtherance of your

14   investigation, did you recover surveillance

15   video from that area?

16      A.    Yes.

17      Q.    Can you please tell us how you did

18   that?

19      A.    When you get to the investigation,

20   you go around the surrounding area where the

21   accident or the incident occurred, and you look

22   to see if there's cameras outside the location.

23   If you see cameras outside of the location, you

24   go inside and try to look for a super, somebody

25   in charge of the building that you looking at

Vasquez

1    and try to get access to the video.

2         Q.    Did you, in fact, do that in this

3    case?

4         A.    I did, yes.

5         Q.    Once you get access to the video,

6    please tell us how you physically recovered the

7    video?

8         A.    You go into the program, you check

9    the date and time, compare to my phone which is

10   the most accurate with the date and time at the

11   moment I'm collecting and after I check that,

12   the date and time, how far or fast it is, I go

13   to the date and the time I'm looking for and I

14   collect the video I need.

15        Q.    If the date and time is not

16   accurate, do you make notation of that?

17        A.    Yes.

18        Q.    And is that how -- withdrawn.

19             Was surveillance video, in fact,

20   recovered in this investigation?

21        A.    Yes.

22        Q.    And the methodology you testified

23   about, was that used in each case?

24        A.    Yes.

25        Q.    Specifically I'm going to introduce

6

Vasquez

1    to you 100 West 118th Street, did you respond

2    there in furtherance of this investigation?

3          A.    Yes.

4          Q.    Did you recover surveillance video

5    from that location --

6          A.    Yes.

7          Q.    -- in the fashion you just

8    testified about?

9          A.    Yes.

10         Q.    Can you tell us whether or not the

11   date and time was accurate when you went to

12   that location, 100 West 118th Street?

13         A.    I wouldn't be able to tell unless I

14   see my notes.

15         Q.    Showing you what has been

16   previously marked as Grand Jury Exhibit 6 for

17   identification purposes only.  I'm going to ask

18   you to please look through your notes.  Do

19   they, in fact, refresh your recollection with

20   respect to the accuracy of the date and time

21   stamp at 100 West 118th Street?

22         A.    They do.

23         Q.    And can you tell us whether or not

24   the time stamp was accurate on that video?

25         A.    It's 11 minutes behind realtime.

KS

Vasquez

1          Q.    So, 11 minutes slow?

2          A.    Yes.

3          Q.    And did you find relevant video for

4    the incident that you're investigating?

5          A.    Yes.

6          Q.    Did you, in fact, recover it?

7          A.    Yes.

8          Q.    Now going to instruct you to 162

9    Lenox Avenue.  Did you respond to that location

10   in furtherance of this investigation?

11         A.    Yes.

12         Q.    And did you notice whether they had

13   surveillance cameras?

14         A.    Yes.

15         Q.    Did you, in fact, recover video

16   surveillance?

17         A.    Yes.

18         Q.    And can you tell us whether or not

19   the date and time stamp was accurate for that

20   location?

21                One second, do you need to refresh

22   your recollection?

23         A.    Yes.

24         Q.    Does Grand Jury Exhibit 6 for

25   identification, in fact, refresh your

8

Vasquez

1    recollection with respect to that?

2              A.    Yes.

3              Q.    Please refer to your notes.

4              A.    It's 18 minutes ahead of time.

5              Q.    Was video also recovered from 196

6    Lenox Avenue?

7              A.    Yes.

8              Q.    What is at that location?

9              A.    It's a restaurant.

10             Q.    And can you please tell us whether

11   or not the video was accurate for that

12   location?  Do you need to refresh your

13   recollection?

14             A.    Yes.  By my notes.

15             Q.    Please do.

16             A.    It was 4 minutes slower.

17             Q.    Again, you're looking at Grand Jury

18   6 for identification, correct?

19             A.    Yes.

20             Q.    Finally, did you recover video from

21   the area 158 West 118th Street?

22             A.    Yes.

23             Q.    And can you tell us whether that

24   video was accurate?

25             A.    Yes.  It was accurate in time.

KS

Vasquez

1          Q.      Thank you.  Now going to show you

2    what's been previously marked as Grand Jury

3    Exhibit 1 for identification purposes.  Do you

4    recognize Grand Jury Exhibit 1?

5          A.      Yes.

6          Q.      What do you recognize it to be?

7          A.      It's a USB drive with the video

8    collected from the locations.

9          Q.      And how do you know that this USB

10   drive has the videos that you collected from

11   those locations?

12         A.      I marked it with my initials.

13         Q.      This is Grand Jury Exhibit 1?

14         A.      Yes.

15         Q.      Did you view this prior to coming

16   to testify today?

17         A.      Yes.

18         Q.      Does Grand Jury Exhibit 1 contain

19   an exact copy of the video recovered that was

20   recovered from those four locations?

21         A.      Yes.

22         Q.      And had they been altered in any

23   way from the original video system through

24   recovery and being transferred on Grand Jury

25   Exhibit 1?

Vasquez

1        A.      No.

2                MS. PRISCO:  At this time I move

3        Grand Jury Exhibit 1 into evidence.  I'm

4        going to play it for the Grand Jury now.

5        Now going to play what's been marked as

6        being Exhibit 1A on Grand Jury exhibit

7        and it's in a file that's marked channel

8        01 under 1A.

9                (VIDEO ON)

10       Q.      Officer, I'm pausing this video at

11       2:15:06, p.m. on the time stamp.  Can you

12       please tell us what we're looking at on the

13       screen at this point?

14       A.      To the right of the screen, looking

15       at it, it would be the building 100 -- was--

16       118th Street.  On front, that's the street

17       where you see the vehicles, that's Lenox

18       Avenue.  Across the street it's a pharmacy.

19       Next to the pharmacy is a deli where the

20       scaffolding can be seen.

21       Q.      Thank you.

22       A.      I think if you press right click,

23       it will give you an option to go faster on the

24       video.

25       Q.      Sorry.  Try it again.  Try a

11

Vasquez

1    different player.

2              Officer, I'm pausing the video at

3    2:48:33 on the time stamp, and I'm going to ask

4    you to direct us to any individuals on the

5    screen who are significant to your

6    investigation.

7         A.    There's a vehicle on Lenox Avenue,

8    traveling towards the right of the screen.

9    Right behind the vehicle you can see a woman

10   crossing at 118th Street on Lenox Avenue.

11   She's walking to the left of the screen.

12        Q.    And do you know who that woman is?

13        A.    Yes.   That's my victim.

14        Q.    What is her name?

15        A.    Judith Thomas.

16        Q.    Now going to play the video.

17   Pausing the video at 2:49:00 p.m. on the time

18   stamp.  Can you please tell us what, if

19   anything, you just observed?

20        A.    We observed an unknown male.  At

21   the moment he's walking to the right of the

22   screen.  He punches the victim and runs towards

23   118th Street, towards the bottom of the screen.

24        Q.    Going to continue to play the

25   video.  Pausing at 2:49:11.  What are we

Vasquez

1    looking at now?

2        A.    To the left of the screen, towards

3    the bottom, you can see the male that was seen

4    punching the victim on the top of the screen.

5        Q.    Going to play.  What direction did

6    that male travel in?

7        A.    He went westbound on 118th Street.

8        Q.    Thank you.  I've now rewound the

9    video time stamp.  That's 2:43:04 p.m.  Can you

10   tell us, Detective, what we're looking at now

11   when I play the video?

12       A.    To the left of the screen you can

13   see the male walking towards Lenox Avenue.

14       Q.    Prior to the incident?

15       A.    Prior to the incident, yes.

16       Q.    What direction does he go in?

17       A.    He goes northbound on Lenox Avenue

18   to the left of the screen.

19             (VIDEO OFF)

20             MS. PRISCO:  Thank you.  Now

21             playing what's marked as Grand Jury

22             Exhibit 1B.

23             (VIDEO ON)

24       Q.    Can you tell us -- paused at

25   15:13:39.  Tell us what we're looking at now.

KS

13

Vasquez

1         A.     That is Lenox Avenue, right under

2    the scaffolding.

3         Q.     Thank you.  I've paused the video

4    at 15:17:38.  What do we see now on the screen?

5         A.     You see the male walking southbound

6    on Lenox Avenue under the scaffolding.

7         Q.     Can you tell us where in relation

8    to where the male is on the screen at this

9    point, where is the restaurant that you

10.  testified about that video was recovered from?

11        A.     Behind him, so he was walking from

12   the restaurant.

13        Q.     Would be towards the top of the

14   screen?

15        A.     Yes.  Towards the top of the

16   screen.

17        Q.     Going to continue to play.  Pausing

18   the video now at 15:17:46.  What did we just

19   observe?

20        A.     At the bottom of the screen, on the

21   left side, you can see the male going under the

22   scaffolding just punching the victim to the

23   floor.

24        Q.     Thank you.

25               (VIDEO OFF)

KS

Vasquez

1           MS. PRISCO:  Now playing Grand Jury

2      Exhibit 1C.

3           (VIDEO ON)

4           Q.    I've paused the video at 14:59 and

5      59 seconds.  What do we see now on the screen?

6           A.    It's a male entering the restaurant

7      prior to the incident.

8           Q.    The restaurant that you said was at

9      the top of the screen?

10          A.    Yes.

11          Q.    Pausing the video at 15:00 and 57

12     seconds.  Can you tell us what we just saw?

13          A.    The man is just walking around in

14     the corner where the restaurant is, outside of

15     the restaurant, then he's seen walking towards

16     where the incident location is going southbound

17     on Lenox Avenue.

18          (VIDEO OFF)

19          MS. PRISCO:  Now playing Grand Jury

20     Exhibit 1D.

21          (VIDEO ON)

22          Q.    I've paused at 14:59:37.  Can you

23     please tell us what we're looking at in this

24     image?

25          A.    That's 118th Street.

Vasquez

1          Q.      And where in relation to what we're

2     looking at on the screen is Lenox Avenue?

3          A.      To the top of the screen.

4          Q.      Continuing to play the video.

5     Paused the video at 15:01, 01 seconds.  What

6     did you just see on the video?

7          A.      You can see from the top of the

8     screen to the left, the male keeps running and

9     crosses the street towards the right of the

10    screen and then he goes into a vehicle.

11         Q.      Thank you.

12              (VIDEO OFF)

13              MS. PRISCO:  Ladies at gentlemen,

14         I'm going to give you a cautionary

15         instruction that applies to testimony

16         that this witness just gave concerning

17         the video and this has to be applied with

18         respect to any testimony that any of the

19         witnesses give from the video.  It's as

20         follows.  The testimony of the witness as

21         to her opinion as to who is depicted in

22         the video, that's being offered for the

23         purpose of assisting you in your

24         determination regarding what happened and

25         or the identity of the person seen in the

Vasquez

1          video.  You are free to accept or reject

2          the testimony and it is your individual

3          and collective determination that counts

4          as to whether the evidence supports a

5          finding that there's legally sufficient

6          evidence and probable cause to believe

7          that the person depicted is as testified

8          to.

9          Q.    Going to show you what's previously

10    marked as Grand Jury Exhibit 4 for

11    identification.  Do you recognize that exhibit?

12         A.    Yes.

13         Q.    What do you recognize it to be?

14         A.    It's an image from the video from

15    the restaurant.

16         Q.    Is it an exact copy of an image

17    from Grand Jury 1C, that's the video from the

18    restaurant that you testified about?

19         A.    Yes.

20              MS. PRISCO:  And I move Grand Jury

21         Exhibit 4 into evidence.

22         Q.    That's an exact copy of a still

23    from the video?

24         A.    Yes.

25              MS. PRISCO:  Thank you.  I have no

KS

17

Vasquez

1    further questions for this witness.   Are

2    there any questions from the Grand

3    Jurors?   Seeing no questions, you may

4    step down.   Call my next witness, Judith

5    Thomas.

6              (WITNESS EXCUSED)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

KS

Thomas

1           THE FOREPERSON: Raise your right hand.

2     J U D I T H                            T H O M A S,

3           called as a witness, having been first

4           duly sworn, responded to the oath and

5           testified as follows:

6           THE WITNESS:  I do.

7     BY MS. PRISCO:

8           Q.    Please tell us your name.

9           A.    Judith Thomas.

10          Q.    And Ms. Thomas, can you please tell

11    us your date of birth?

12          A.    The 4th of January, 1946.

13          Q.    How old are you?

14          A.    I'm 75 years old.

15          Q.    I'm going to draw your attention,

16    Ms. Thomas, to Sunday April 4, 2021, at

17    approximately 3:00 p.m.; do you recall where

18    you were?

19          A.    Yes.  I was on Lenox Avenue.  I was

20    walking toward 120th and Lenox, which was my

21    destination.

22          Q.    That's here in Manhattan, correct?

23          A.    Yes.

24          Q.    Were you walking alone or were you

25    with anyone?

Thomas

1        A.    I was walking alone.

2        Q.    And where were you headed to?

3        A.    I was headed to a restaurant at

4   120th and Lenox to meet my sister for Easter

5   Sunday dinner.

6        Q.    Please tell us what, if anything,

7   memorable happened at that time?

8        A.    I was walking up Lenox and I was in

9   a hurry because I was a couple of minutes late

10   and a man approached me and he looked okay.  He

11   was cleanly dressed.  He wasn't disheveled or

12   strange or anything.  I looked in his eyes, he

13   didn't seem focused on me, but as I came

14   abreast of him, he suddenly reached out and

15   punched me in the mouth really hard.

16        Q.    And had you ever seen him before?

17        A.    Not to my knowledge.

18        Q.    Can you please describe what he

19   looked like for us?

20        A.    He was African American, about

21   medium brown complexion.  He was wearing a jean

22   jacket I believe and jeans, and he had a cap

23   perched on top of his head like he had a large

24   amount of hair underneath it or dreads

25   underneath it.

20

Thomas

1      Q.      And did the man say anything to you

2    prior to striking you?

3      A.      Nothing.

4      Q.      And when he struck you, you said he

5    struck you in the mouth?

6      A.      Yes.

7      Q.      What happened next?

8      A.      I screamed and I flew backwards and

9    I landed on the ground on my back, on my

10   posterior.

11     Q.      Did you see where the man went?

12     A.      No.

13     Q.      What happened next?

14     A.      I was just stunned.  I sat up and I

15   put my face in my hands.  I said oh my God,

16   what happened, what happened, and people came

17   over to me and they helped me get up.  I was so

18   stunned and surprised I couldn't do anything.

19   They called the police and they called EMS and

20   they gave me some water and tried to comfort

21   me.

22     Q.      And at some point did police and

23   EMS arrive?

24     A.      Yes.

25     Q.      What happened then?

KS

21

Thomas

1          A.      Well, the police put me in the back

2      of the police wagon or station wagon and they

3      were talking to me about what happened; could

4      they contact anybody for me, but I was so

5      stunned I couldn't remember my sister's phone

6      number. And they were trying to take a report

7      to find out if I knew this man, was anything

8      said, did he take anything from me and I said

9      no.

10         Q.      Did you receive medical treatment

11     at that time?

12         A.      Well, they offered to take me to

13     the hospital but I didn't want to go to the

14     hospital because, generally, Manhattan, it's a

15     six-hour wait to get medical treatment, and I

16     figured that I'd just get medical treatment,

17     they gave me an ice pack and tell me to take

18     Tylenol, I didn't need to wait six hours for.

19     I did go to the office of my dentist.

20         Q.      Do you know approximately when you

21     did that?

22         A.      A few days after the incident.

23         Q.      Can you tell us what, if any,

24     effect, physical effect you had from being

25     struck that day?

KS

Thomas

1           A.     Well, he struck up in a way where

2     my teeth went through the lining of my cheeks

3     and the lining of my lips and I was cut up

4     inside my mouth and I was bleeding.

5           Q.     Can you tell us whether or not you

6     experienced any pain as a result of being

7     struck?

8           A.     Yes.  It was very painful.

9           Q.     And for approximately how long did

10    you have pain?

11          A.     Well, at least a week.

12          Q.     Did -- was there any impact on your

13    ability to eat?

14          A.     Well, it was difficult.  I was

15    holding an ice pack in one hand, putting food

16    in my mouth with another.

17          Q.     For how long approximately?

18          A.     This was three or four days of it

19    so swollen.  I kept having to change ice packs.

20          Q.     And can you tell us what, if any,

21    impact this incident had on your ability to

22    speak?

23          A.     Well, I'm okay now because I

24    recovered, but during the week afterwards it

25    was hard to.  Every time I talked or I ate I

Thomas

1    felt pain, and the dentist prescribed some pain

2    medication for me to keep with the week

3    afterwards.

4            Q.    Did you, in fact, need to take that

5    pain medication?

6            A.    Yes.

7            Q.    For approximately how long did you

8    take the pain medication?

9            A.    For at least five days.

10           Q.    I'm going to show you what's been

11   previously marked as Grand Jury Exhibit 2 and 3

12   for identification.

13           A.    Oh yes, that's me.

14           Q.    Did you recognize Grand Jury

15   Exhibit 2 and 3 for identification purposes?

16           A.    Oh yes.

17           Q.    What do you recognize them to be?

18           A.    Me.

19           Q.    And are these photographs of you?

20           A.    Yes.   Photographs of me taken the

21   day afterwards.

22           Q.    And do Grand Jury Exhibits 2 and 3

23   for identification fairly and accurately depict

24   the way you looked the day after the incident?

25           A.    Yes.

KS

Thomas

1          MS. PRISCO:  I now move Grand Jury

2      Exhibit 2 and 3 into evidence and going

3      to display them for the Grand Jury.

4          Q.    Showing you, displaying Grand Jury

5    Exhibit 2 now in evidence.  I'm going to draw

6    your attention to the area to the right of your

7    mouth that looks bruised; what caused that?

8          A.    The fist coming in contact with my

9    teeth.

10         Q.    How about the discoloration and

11   laceration above your lip; what caused that?

12         A.    That was from also his fist.

13         Q.    And the swelling; was that also

14   caused by being struck?

15         A.    All of it was caused by the fist

16   touching my face.

17         MS. PRISCO:  Going to enter Grand

18      Jury Exhibit 3 into evidence.

19         Q.    What are we looking at in Grand

20   Jury Exhibit 3 into evidence?  Is that a

21   close-up of you?

22         A.    Yes.

23         Q.    Showing you -- what is it showing?

24         A.    It's showing the bruising and the

25   swelling.

Thomas

1          Q.    Ms. Thomas, going to play some

2     video that's in evidence and ask you to watch

3     it and testify about did.  Okay?

4          A.    Okay.

5                (VIDEO ON)

6          Q.    Ms. Thomas, I have Grand Jury

7     Exhibit 1B paused at 15:17:30.  Do you

8     recognize the area we're looking at on the

9     screen?

10         A.    Yes, I do recognize that.

11         Q.    What do you recognize that to be?

12         A.    That was the scaffolding outside of

13    the deli where I was hit.

14         Q.    Going to play the video.

15         A.    There he is.  He hits me, I go

16    down.

17         Q.    Going to rewind it just for a

18    minute.  Okay, pausing at 15:17:43.  Going to

19    draw your attention to the left side of the

20    screen to the person with the dark colored coat

21    on with the tan pants; who is that?  Right

22    here.

23         A.    That would be me.

24         Q.    Is this white bag on the left side

25    of the screen, is that your bag?

Thomas

1          A.     Yes.

2          Q.     Now going to play.  And can you

3    tell us what just happened?

4          A.     He punched me and I went down.

5          MS. PRISCO:  I have no further

6    questions for this witness.  Are there

7    any questions from the Grand Jurors?

8    Seeing no questions, you may step down.

9          THE WITNESS:  Thank you.

10         MS. PRISCO:  Thank you.

11         (WITNESS EXCUSED)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

KS

Black

```
 1              MS. PRISCO:  Call my next witness,
 2         Libby Black.
 3              THE FOREPERSON: Raise your right
 4         hand.  Please stand and raise your right
 5         hand.
 6    L I B B Y                    B L A C K,
 7         called as a witness, having been first
 8         duly sworn, responded to the oath and
 9         testified as follows:
10              THE WITNESS:  I do.
11    BY MS. PRISCO:
12         Q.    Please tell us your name.
13         A.    Libby Black.
14         Q.    Ms. Black, are you familiar with an
15    individual by the name of Kazzim Cooper?
16         A.    Yes, I am.
17         Q.    For how long have you known Kazzim
18    Cooper?
19         A.    Since March of 2019.
20         Q.    Since March of 2019, on how many
21    occasions have you seen him in person?
22         A.    Multiple.  Once a week.  Except for
23    one period for about a month.
24         Q.    Other than that one month, you saw
25    him weekly?
```

Black

1         A.    Yes.

2         Q.    Since March of 2019?

3         A.    Yes.

4         Q.    On the occasions where you saw

5    Kazzim Cooper, for how long would you meet?

6         A.    Fifteen to twenty minutes.

7         Q.    And during that time period, did he

8    have anything obstructing his face?

9         A.    No.

10         Q.    Approximately how old is Kazzim

11    Cooper?

12         A.    Thirty-four.

13         Q.    On the occasions where you met with

14    Kazzim Cooper, where would you meet with him?

15         A.    In my office or at his home.

16         Q.    And what is the address of his

17    home?

18         A.    152 West 118th Street, apartment

19    5E, New York, New York.

20         Q.    Going to show you some video and

21    still photos and ask you some questions.  Okay?

22         A.    Okay.

23         (VIDEO ON)

24         Q.    Showing you what's in evidence as

25    Grand Jury Exhibit 1C and I'm going to ask you

Black

1       if you recognize it?

2              A.    Yes.

3              Q.    Anyone in this video who you

4       recognize?

5              A.    Kazzim Cooper with the beige hat on

6       and the jean jacket and jeans.

7              Q.    And how do you recognize him from

8       this video?

9              A.    I recognize him actually from his

10      face and from the hat and his outfit.

11             Q.    Have you seen him wearing this

12      apparel on another occasions?

13             A.    Yes.

14             (VIDEO OFF)

15             Q.    Also going to show you what's in

16      evidence as Grand Jury Exhibit 1D.

17             (VIDEO ON)

18             Q.    I've paused Grand Jury Exhibit 1D

19      at 15:01:01.  Directing your attention to the

20      person who we see in the denim outfit running

21      from the top of the screen.  Do you know -- do

22      you recognize this street on Grand Jury Exhibit

23      1D?

24             A.    This is 118th Street and

25      Mr. Cooper's apartment is on the right-hand

Black

1    side of the little bit.

2         Q.    And that's the apartment that you

3    have met with him?

4         A.    Yes.

5         Q.    And going to draw your attention

6    specifically to the building that the person on

7    the video is going to -- into at 15:01:01; do

8    you recognize that building?

9         A.    Yes, I do.

10        Q.    And who, if anyone, do you know

11   lives in that building?

12        A.    Mr. Kazzim Cooper lives in that

13   bailing.

14             (VIDEO OFF)

15        Q.    Showing you Grand Jury Exhibit 4 in

16   evidence, and displaying for the Grand Jurors.

17   Do you recognize the person depicted on that

18   photograph?

19        A.    Yes, I do.   That's Mr. Kazzim

20   Cooper.

21        Q.    Going to show you what's

22   previously marked as Grand Jury Exhibit 5 for

23   identification.   Ask you to look at this

24   exhibit, please.

25        A.    That's Mr. Cooper.

Black

31

1        Q.    Is Grand Jury Exhibit 5 a fair and

2  accurate depiction of Mr. Cooper -- Mr. Kazzim

3  Cooper and how he appears?

4        A.    Yes.

5        MS. PRISCO:  I now move Grand Jury

6  Exhibit 5 into evidence.  I have no

7  further questions for this witness.  Any

8  questions from the Grand Jurors?

9        (CONFERRING)

10       MS. PRISCO:  Any other questions?

11  Okay, seeing no questions, you may step

12  down.

13       (WITNESS EXCUSED)

14

15

16

17

18

19

20

21

22

23

24

25

KS

Ex E

Grand Jury

Transcripts

31 pages

Ex F

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK: CRIMINAL TERM

-----------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

**AFFIRMATION IN SUPPORT OF MOTION TO CONTROVERT**

**INDICTMENT 935-21**

-against-

KAZZIM COOPER

Defendant.

-----------------------------------------------------------------X

**GLENN F. HARDY ESQ.,** an attorney duly admitted to practice law before the Courts of the State of New York, the attorney of record for the Defendant herein, hereby affirms under the penalties of perjury the following:

1. All allegations contained herein, unless otherwise indicated, are based upon information and belief, the sources of such information being available court records, conversations with the Defendant and voluntary disclosure by the District Attorney. I make this affirmation in support of Defendant's Motion to controvert the search warrant.

2. The Defendant is charged with ASSUALT (PL SEC. 120.05).   Defendant has been arraigned and has entered a plea of not guilty to said charges.

3. On or about April 6, 2021, the People obtained a search warrant authorizing the search of the defendant's electronic devices, including his cell phone.

4. Defendant submits that the aforementioned search warrant is facially invalid, overbroad, improperly granted in that probable cause for the search warrant was lacking at the time of the application for said search warrant, and improperly executed. Accordingly, all materials seized pursuant to the warrants must be suppressed.

## I. STANDING

5. Defendant possesses standing to challenge the said search and seizure inasmuch as that at the time of said search and seizure Defendant is the owner of target items and the Defendant clearly had a legitimate expectation of privacy in the area where said search was conducted.

## II. THE WARRANT TO SEARCH THE DEFENDANT'S CELL PHONE/ELECTRONIC DEVICS IS INVALID AS NOT BEING PREMISED UPON PROBABLE CAUSE

6. Any evidence seized from the Defendant's cell phone/electronic devices must be suppressed as the warrant to search the Defendant's phone was not properly premised upon the probable cause.

7. In support of their application to search the Defendant's cell phone/electronics, Police Officer Vasquez asserts **no information** that the Defendant utilized his cell phones in connection to the criminal .

8. Det. Vasquez's affidavit does not even establishes that the Defendant had a cell phone when he the crime was committed.

9.    Moreover, Det. Vasquez's assertion that the Defendant's phone **might** contain evidence of the incident is not premised upon specific and particularized facts that support issuance of the search warrant. Rather, Officer. Vasquez merely offers vague, generalized assertions. Nowhere in Officer Vasquez's affidavit does he offer any particularized <u>factual</u> evidence establishing that

14.    Consequently, the People's application for the seizure of property and the authority to search inside any electronic equipment recovered is overbroad and has no specific nexus to the charged crimes. Thus the issuance of a warrant to search otherwise protected material for which no probable cause to search existed must be found invalid. People v. Carratu, 194 Misc.2d 595, United States v. Carey, 172 F.3d 1268. The search of the cellphone or any electronic deivice, violated the Fourth Amendment's proscription against general searches. Particularity is required to protect against "wide-ranging exploratory searches unsupported by probable cause." People v. English, 52 Misc.3d 318 *citing* United States v. Rosa, 626 F.3d 56, 61 (2d Cir. 2010) See also United States v. Galpin, 720 F.3d 436, 447 (2d Cir. 2013)

15.    Therefore, the police did not have probable cause based on anything they could have observed or been informed of which would have justified the issuance of the search warrant of the target phones. For this reason, the evidence allegedly recovered should be suppressed. This includes not only the physical evidence, photographs, and videotapes, but also any testimony of the officers concerning observations of physical evidence or incriminating evidence of the targets.    People v. Middleron 125 Misc.2d 634, 480 NYS2d 76 (Sup. Ct. Kings Co. 1984). This also includes any telephone records or fingerprints the People may seek to introduce. People v. Thomas NYLJ 4/13/95 at 29, col. 3 (Crim. Ct., NY Co.) (Cataldo, J.); People v. Rizwan, NYLJ, 8/9/95 at 22, co. 3 (Crim. Ct., NY Co.) (Parker, J.).

### III. EVIDENCE SEIZED PURSUANT TO THE SEARCH WARRANTS MUST BE SUPPRESED BECAUSE THE SEARCH WARRANTS ARE OVERBROAD

16. New York State courts have long expressed an "intolerance of general search warrants." See, e.g., People v. Niemczycki, 67Ad.2d 442, 415 NYS.2d 258 (2nd Dept. 1979).

15

**34.** Additionally, C.P.L. 690.25 provides a list of who may execute a search warrant. Specifically CPL § 609.25 states in relevant part that:

1. (1) A search warrant must be addressed to a police officer whose geographical area of employment embraces or is embraced or partially embraced by the county of issuance. The warrant need not be addressed to a specific police officer but may be addressed to any police officer of a designated classification, or to any police officer of any classification employed or having general jurisdiction to act as a police officer in the county.
2. (2) A police officer to whom a search warrant is addressed, as provided in subdivision one, may execute it pursuant to its terms anywhere in the county of issuance or an adjoining county, and he may execute it pursuant to its terms in any other county of the state in which it is executable if (a) his geographical area of employment embraces the entire county of issuance or (b) he is a member of the police department or force of a city located in such county of issuance.

**35.** Here, on information and belief, the search of the cell phone was not conducted by an authorized individual, in that said search was performed by "forensic computer analysts" associated with the Special Prosecutor's office, or Apple Computer or some other similar entity. As said examining individual is not a "police officer" as that term is defined in C.P.L. § 1.20(34), he/she could not properly execute the cell phone search warrant.

**36** A search warrant does not allow unlimited or repeated searches, nor can police or prosecutors or this Court delegate the responsibility of searching an electronic instrument such as a cellular telephone to someone not explicitly authorized to do so in C.P.L. § 690.25. Accordingly, this Court must suppress any evidence obtained from Defendant's cellphone because it was executed by a non-police officer.

WHEREFORE, it is respectfully requested that this Court grant the relief requested herein, and that it grant such other and further relief as to the Court may seem just and proper.

In People v Brown, the Court of Appeals held that a warrant authorizing the search for several identified items and "any other property the possession of which would be considered contraband" was overbroad. [The subject search warrant]2 suffered from an even more significant infirmity. It did not list specific categories of data it sought and then expand that authority to anything else which was unlawful. It merely authorized, at best, a search for evidence that anyone had committed any offense. It is hard to imagine a more broadly worded directive.

The [subject warrant] was also significantly broader than the warrant determined to be overbroad by the Second Circuit in its decision in United States v George. That warrant authorized a search for a number of discrete items of evidence in connection with an armed robbery along with "any other evidence relating to the commission of a crime." The court found this catchall language insufficiently particularized, noting that it provided officers "virtually unfettered discretion to seize anything they [saw]." "Mere reference to 'evidence' of a violation of a broad criminal statute or general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize." Id. (citations omitted).

30.    The second warrant at issue before Judge Conviser concerned an iphone that had been recovered stated that "[p]roof by affidavit" had been made that "certain property . . . may be found" on the defendant's iPhone and then listed that "certain property" as "all stored electronic information," "electronic security equipment and devices" and "evidence of ownership" of the phone. Id. No other limitations on the property or data covered by the warrant were provided. Id. The warrant authorized law enforcement to process the phone for forensic evidence and directed Apple to assist law enforcement in their search of the phone, including bypassing the phone user's passcodes. Id.

31.    In considering this second "cell phone warrant," Judge Conviser stated

[t]he cell phone warrant . . . authorized the search of a much smaller universe of information but was even less particularized than [the premises] search warrant. As outlined, [the cell phone warrant] simply authorized a search for "all stored electronic information" and "electronic security equipment and devices" on the phone. Obviously, [the cell phone warrant] was insufficiently particularized.

It is certainly correct, as the People argue, that New York's search warrant statute does not require that a warrant specify which crimes it is directed towards. Warrants should not be read in an

**17.** The language of the search warrants that relates to electronic communications and devices is so generalized and sweeping that it runs afoul of constitutional safeguards because it allows an unrestricted, unfettered search of all electronic communications devices and files contained within those devices. Specifically, the Search Warrants state in relevant part as follows:

and,

Proof by affidavit having been made . . . that there is reasonable cause to believe that certain property, to wit:

* * *

electronic communication equipment, including but not limited to telephone bases and handsets, cellular telephones, computers, tablets, smart phones, answering machines, paging devices and related equipment, including but not limited to auxiliary batteries, chargers, and wiring, and stored information, data, and images contained on or in said communication equipment, including but not limited to stored names and numbers and recorded messages; and electronic security equipment and devices;

* * *

YOU ARE THEREFORE COMMANDED . . . to make a search of [the subject premises] and if you find such property or evidence or any part thereof to bring it before the court. . .

Proof by affidavit having been made . . . that there is reasonable cause to believe that certain property, to wit evidence pertaining to the participation in a criminal organization involved in narcotics sales and possession, including, but not limited to, messages, photographs and the names, addresses and/or telephone numbers of narcotics suppliers, customers or co-conspirators, which may be found in [an iphone]

YOU ARE THEREFORE COMMANDED . . . to make a search of [the subject iphone] for data, including the electronic storage of information, photographs, images, video, text messuages, and e-mails, reflecting the participation in a criminal organization involved in narcotics sales and possession . . .

**18.** Indeed, the search warrants are, in reality, general warrants which violate the Fourth Amendment. The particularity requirement of the Fourth Amendment guards against "general, exploratory rummaging in a person's belongings." Coolidge v New Hampshire, 403 US 443, 467 (1971). See Andresen v Maryland, 427 US 463, 479 (1976). In Marron v United States, 275 US 192, 196 (1927), the Supreme Court laid out the rationale for the particularity requirement:

Dated: February 6, 2022

*Glenn F. Hardy*

_____

GLENN F. HARDY, ESQ.

Ex F

Motion to

Controvert

15 pages
36 paragrephs

Ex H

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT

KAZZIM COOPER A/K/A KAAZIM ASAD
COOPER,

                                        Petitioner,

                    -against-

WARDEN RENEE, N.Y.C. DEPT OF
CORRECTION,

                                        Respondent.

AFFIRMATION IN OPPOSITION
TO PRO SE PETITION FOR WRIT
OF HABEAS CORPUS

N.Y. Co. Indictment No. 935/21

Calendar Date:  Apr. 4, 2022

        NOREEN M. STACKHOUSE, an attorney duly admitted to practice before the courts of

this State, affirms that:

        1.        I am an Assistant District Attorney, of counsel to ALVIN L. BRAGG, JR., District

Attorney of New York County.  I submit this affirmation in opposition to petitioner's pro se petition

for a writ of habeas corpus pursuant to CPLR Article 70.  The factual allegations herein are based

on my review of the petition and records maintained by the District Attorney's Office and the New

York State Department of Corrections and Community Supervision ("DOCCS"), as well as on my

communications with Sarah Lubin, the Assistant District Attorney ("ADA") assigned to prosecute

the criminal case that gives rise to the instant petition.

        2.        On August 14, 2015, petitioner was convicted, following a bench trial, of one count

of Assault in the First Degree (Penal Law § 120.10[1]) and one count of Assault in the Second

Degree (Penal Law § 120.05[1]), and sentenced to concurrent determinate terms of six years in

prison.

        3.        On December 7, 2018, petitioner was released to parole supervision.

        4.        On June 6, 2020, petitioner e-mailed his former therapist and threatened to "blow

[her] head off."  Petitioner was arrested on January 8, 2021, and charged, by Misdemeanor

Complaint Number CR-000418-21NY with, inter alia, Harassment in the First Degree (Penal Law § 240.25), Harassment in the Second Degree (Penal Law § 240.26[1]), and Stalking in the Fourth Degree (Penal Law § 120.45[1]). As a consequence of these events, DOCCS issued a Violation of Release Report (VRR) charging petitioner with violating the condition of release requiring him to refrain from "behav[ing] in such a manner as to violate the provisions of any law to which [petitioner] is subject which provides for a penalty of imprisonment," or which "threaten[s] the health and safety" of petitioner or others.

5. At his arraignment on January 9, 2021, petitioner was released and restored to parole supervision.

4. On April 4, 2021, petitioner punched a 75-year-old woman in the face, causing her to fall to the ground and sustain a laceration to her cheek. The incident was captured on surveillance footage. A police officer from the 28th Precinct issued an "I-card" for petitioner that same day. Petitioner subsequently stopped attending his supervised release program, and failed to report to parole. On April 8, 2021, DOCCS issued an absconder warrant.

5. A grand jury, by New York County Indictment Number 935/21, filed on April 30, 2021, charged petitioner with one count of Assault in the Second Degree (Penal Law § 120.05[2]). That same day, an arrest warrant was issued for petitioner's arrest in connection with that indictment.

6. On July 21, 2021, parole officers arrested petitioner in Fairfax, Virginia. On August 13, 2021, petitioner waived extradition in the General District Court in Arlington, Virginia, voluntarily consenting to be transported from Virginia to New York. Beginning on August 17, 2021, petitioner was incarcerated on Rikers Island pursuant to a parole hold.

7.     The District Attorney's Office attempted to produce petitioner to court for arraignment on Indictment Number 935/21 on September 1, 2021 and September 10, 2021, but he refused to be produced.[1]  On September 14, 2021, petitioner was produced to court pursuant to a "force order" issued by the Supreme Court and his arrest was processed, but he was not arraigned. The District Attorney's Office again attempted to produce petitioner to court for arraignment on September 17, 2021, but he was not produced despite the issuance of a force order.  On September 23, 2021, petitioner was arraigned upon the indictment in Supreme Court.  Petitioner's case currently is pending in Supreme Court before the Honorable Curtis Farber.

8.     On February 22, 2022, petitioner filed the instant petition for a writ of habeas corpus. Although petitioner is represented by counsel in the criminal case giving rise to this action, he filed this petition pro se.[2]  In his petition, petitioner contends, inter alia, that his "due process rights were violated" because he was incarcerated on Rikers Island for "over a month" before his arraignment on September 23, 2021; that he was not assigned counsel until his arraignment; and that he was subjected to custodial interrogation without first being administered Miranda warnings.  For the reasons discussed below, petitioner's claims do not merit habeas corpus relief.

9.     As an initial matter, this petition should be transferred to Supreme Court for consideration. CPLR 7002(b)(5) provides that an inmate "in a city having a population of one million or more inhabitants . . . shall petition for a writ to the supreme court in the county in which the charge for which the inmate is being detained is pending."  An "inmate may also petition for a writ to the appellate division in which he is detained," provided that "the writ shall be made returnable before a

---

[1] According to e-mails contained in the Supreme Court file for Indictment No. 935/21, ADA Jean Prisco attempted to schedule petitioner's arraignment on August 20, 2021, but Part 81 was "down" for the entire following week.

[2] Petitioner's trial counsel, Glenn Hardy, indicated to ADA Lubin that he would adopt the writ.

justice of the supreme court held in the county in which the charge for which the inmate is being detained is pending." Here, although petitioner may petition for a writ of habeas corpus to this Appellate Division, First Department, the writ should be made returnable before a justice of the Supreme Court of New York County. After all, that is the county where the criminal charges for which petitioner is being detained are pending. Accordingly, as has been this Court's usual practice when petitioners move for writs of habeas corpus to be issued from this Court, this Court should grant the motion only to the extent of transferring the habeas proceeding to Supreme Court to be heard before a justice of that court. See, e.g., People ex rel. Smalls v. City of New York, M-2936 (1st Dept. Sept. 20, 2018); People ex rel. Sears v. City of New York, M-2031 (1st Dept. July 10, 2018); People ex rel. Ferguson v. City of New York, M-4745 (1st Dept. Oct. 31, 2017); People ex rel. Roundtree v. Windley, M-5442, M-5720 (1st Dept. Feb. 21, 2017)

10.    In any event, petitioner's claims before this Court do not entitle him to habeas relief. The writ of habeas corpus is an "extraordinary" remedy. People ex rel. Rosenthal v. Wilson, 48 N.Y.2d 230, 233 (1979). The writ should not be used to review claims that could be raised through other avenues, unless a departure from such "traditional orderly proceedings" is "dictated … by reason of practicality and necessity." People ex rel. Keitt v. McMann, 18 N.Y.2d 257, 262 (1966). Thus, it is well-established that a habeas petition may not present claims that could be raised on direct appeal or by post-conviction motion. People ex rel. Gross v. Smith, 69 N.Y.2d 727, 729 (1987); People ex rel. Flemming v. Rock, 110 A.D.3d 533, 534 (1st Dept. 2013); People ex rel. Grant v. Scully, 190 A.D.2d 543, 544 (1st Dept. 1993); People ex rel. Kitchen v. White, 158 A.D.2d 437 (1st Dept. 1990). By the same token, a habeas petition is an inappropriate vehicle to present claims that, even if meritorious, would not result in immediate release. People ex rel. Kaplan v. Comm'r of Corr. of City of New York, 60 N.Y.2d 648, 649 (1983); People ex rel. Douglas v.

Vincent, 50 N.Y.2d 901, 903 (1980); People ex rel. Hickman v. Russi, 257 A.D.2d 457, 457 (1st Dept. 1999).

11.      Applying these principles, even if this Court were to review the merits of the claims raised in the instant petition, it should be dismissed.  At the outset, petitioner's complaint that his due process rights were violated because he was not arraigned for over a month is disingenuous because, as noted above, petitioner refused to be produced for arraignment on at least three separate dates during that month.  Regardless, his petition should be dismissed because none of his claims are cognizable in a habeas corpus petition, but rather, most of them can be reviewed on direct appeal or in a post-judgment motion.  See Scully, 190 A.D.2d at 543-44 (finding that petitioner's claims that the Assistant District Attorney did not read him his Miranda warnings, and that petitioner was denied the right to counsel and the right to testify before the grand jury, may not be raised in a habeas proceeding).  Finally, to the extent petitioner contends that he was denied the right to counsel, that claim, even if meritorious, would not entitle him to release from custody, as he is represented by counsel.  See Douglas, 50 N.Y.2d at 903.  All told, petitioner utterly fails to identify any grounds for granting him a writ of habeas corpus.

WHEREFORE, the instant petition for a writ of habeas corpus should be dismissed by this Court or transferred to, and be heard before, a justice of the Supreme Court, New York County

Dated: New York, New York
       March 31, 2022

NOREEN STACKHOUSE
Assistant District Attorney
(212) 335-9311

Ex H

Habeas Affirmation

5 pages

Ex G

Parole violation

Report

8 pages

Ex G



## VIOLATION OF RELEASE REPORT

### CASE SUMMARY

Name: Cooper, Kazzim

Warrant #: Warrant Number

NYSID: **05443349K**

DIN: **15A3590**

| | |
|---|---|
| | Kazzim Cooper is a 32 year old male who is presently serving a sentence of 00-00 06-00 for 1 count of ASSAULT 1ST, and 00-00 06-00 for 1 count of ASSAULT 2ND. He was sentenced on 08/14/2015 by the Honorable Judge Stolz of the New York Supreme Court. He has a Post Release Expiration Date of 12/07/2023 It is also noted that Mr. Cooper is a COMPAS Level 1, OMH Level 1S, SMI-V. |
| ***CRIME OF CONVICTION & CURRENT SENTENCE*** | Click or tap here to enter text. |
| ***DESCRIPTION OF INSTANT OFFENSE*** | In the instant offense, on 08/30/13 in lower Manhattan, NYC. The subject approached the victim pushing him after aggressively bumping upon two of victims family members traveling with him. The victim had a verbal disagreement with the subject and turned to walk away. The subject then grabbed a metal stepladder from the front of the store on Canal St and struck the victim in the back of his head. The victim gathered himself even though he had major injuries to his head and struggled with the subject until he broke free from the victims grips and ran. The victim was taken to the hospital where he received care for skull fractures and lacerations. The subject was later captured due to a witness cellphone video. The subject admits guilt and pled guilty. |
| ***CRIMINAL HISTORY*** | The subject criminal history which began in 2004 at the age of 18, with a misdemeanor conviction for Petit Larceny, sentenced to conditional discharge. The subject has been arrested (10) times yielding (1) felony conviction, (7) misdemeanor convictions, (2) violations, and (1) YO adjudication for Criminal Sale Controlled Substance 4th. The subject's criminal history: (2X) Petit Larceny, 10/21/05 YO Adj. CSCS 4th, sentence 5 years probation, 3/15/09 Disorderly Conduct, Conditional Discharge, (2X) Trademark Counterfeiting 3rd, Sentenced 3 Days, 11/21/11 Obstruction of Government Administration 2nd, Time served. 12/30/11 Unlawful Possession of Marijuana, Fine $75, 2/11/13 Intent to Obtain Transportation without Pay, Time served. 6/20/13 Resisting Arrest, Conditional Discharge. The subject's pattern of criminal behavior is larcenous with Assault. |
| ***PRIOR TERMS OF PROBATION/PAROLE*** | This appears to be the first time on parole supervision. |
| ***PRIOR VIOLATIONS ON CURRENT TERM*** | This is the subject's third violation of release report on this instant offense. |
| ***GENERAL ADJUSTMENT TO PAROLE SUPERVISION*** | The subject adjustment is guarded. He was released after sustaining a revoke and restore to Parole supervision on 1/8/21 as a non-Brad H Transport, and was arrested by the 24th Precinct, Detective Moulchtry for Aggravated Harassment, Harassment, Harassment 2nd, Physical Contact, and Stalking 4th. His conditions of release, curfew and current programming were discussed. The subject was CASES MICA Treatment for Mental Health, Anger Management, and Substance Abuse Treatment. |
| ***CURRENT VIOLATIVE BEHAVIOR*** | On 6/6/2020, after developing an infatuation for his therapist, Ms. Francesca Aborn, he began sending her inappropriate messages on the telephone and by email, and was discharged program the program. The subject, on 6/6/2020, sent an email stating, 'I'm going to blow your head off.' |

CS4003

 **Corrections and Community Supervision**

| | |
|---|---|
| **CIRCUMSTANCES OF CUSTODY** | The subject was taken into custody upon release from Riker's Island on 1/8/20 and was arraigned in New York Criminal Court on 1/9/20 bb Judge Frishman in Part APAR3, and was served a Temporary Order of Protection, and the case was adjourned with a next court date of 3/1/21 in New York Criminal Court in Part A |
| **PAROLEE STATEMENT** | The subject made no statements. |
| **PRESENT STATUS** | The subject has now returned to his residence and been immediately referred to MICA Intensive Treatment at BRC MICA Tx for MH, Substance Abuse, and Anger Mgmt. Mr. Cooper signed a special condition to have no further contact with the victim, as well as her residence, place of work or family. |
| **OTHER INFORMATION** | 'I just want him to leave me alone, he keeps emailing me.' |

**CERTIFICATE OF RELIEF FROM DISABILITIES**   YES ☐ DATE ISSUED (M/D/YYYY) NO ☒

**CERTIFICATE OF GOOD CONDUCT**                      YES ☐ DATE ISSUED (M/D/YYYY) NO ☒

PO L. Black

_____        _____        1  |19|21

**Name/Title**              **Signature**                    **Date**

SPO A. Johnson

_____        _____        8/12/2021

**Name/Title**              **Signature**                    **Date**

CS4003



**Corrections and
Community Supervision**

## VIOLATION OF RELEASE REPORT

### CHARGE SHEET

**Warrant Issued:** ☐

**Name:** Cooper, Kazzim

**NYSID:** 05443349K

**DIN:** 15A3590

**DOCCS Releasing
Facility: Sing Sing**

**Date of Birth: 10/15/1986**

**COMPAS Level: 1**

**No Warrant Issued:** ☒

**Date Released: 12/7/2018**

Date of Warrant: M/D/YYYY

Warrant #: Warrant Number

Date Warrant Enforced: M/D/YYYY

Location Warrant Enforced: County
Facility

Sexually Motivated Felony: **No**

Delinquency Date: 6/6/2020

| Instant Offense | Sentence |
| --- | --- |
| ASSAULT 1ST | 00-00 06-00 YR |
| ASSAULT 2ND | 00-00 06-00 YR |

Time on Community Supervision: ## Years ## Months ## Days

Since her release, the above-named individual has violated the Conditions of Release in the following manner:

| Charge #1 | Kazzim Cooper violated rule #8 of the rules governing the conditions of release when his behavior violated the provisions of law to which he is subject which provides for a penalty of imprisonment in that on or about 6/6/20, at or about 9:50 am located inside at 152 W. 118 St NY, NY he did send an email to Francesca Aborn, stating 'I'm going to blow your head off.' |
| --- | --- |
| Charge #2 | Kazzim Cooper violated rule #8 of the Conditions of Release when his behavior threatened the safety or wellbeing of himself or others in that on or about 6/6/20, at or about 9:50 am located inside at 152 W. 118 St NY, NY he did send an email to Francesca Aborn, stating 'I'm going to blow your head off.' |

### POSSIBLE WITNESSES

Francesca Aborn

### DOCUMENTS PROVIDED AT TIME OF SERVICE

Violation of Release Report

Page 1 of 1

CS4003

**NEW YORK STATE** | **Corrections and Community Supervision**

## SUPPLEMENTARY VIOLATION OF RELEASE REPORT # 1

Name: **Cooper, Kazzim**

Warrant #: **839282**

NYSID: **05443349K**

DIN: **15A3590**

| | |
|---|---|
| **INTRODUCTION** | The subject was arrested on 1/8/21 upon release from Rikers Island after being revoke and restored to parole supervision. On 1/9/21 he was arraigned in NY Criminal Court, APAR3, Docket#CR-000418-21NY with Judge Frishman where a Temporary Order of Protection was issued, the case was continued (adjourned) and he was given a next court date of 3/1/21 with Judge Swern in Part A. On 1/19/2021, a Violation of Release Report was submitted, charging the subject with violating rules # 8, and 8. The subject was arrested on 1/8/21 for a crime occurrence on 6/6/20 for threatening and harassing a prior therapist at the subjects' program. A decision of a No Delinquency pending court action was recommended on 2/16/21 based on the unwillingness of the witness to testify at a parole hearing. On 3/31/21 the People were Certified Comp was filed/ready with a next court date of 4/21/21 in NY Criminal Court Part A. Mr. Cooper was also given a special condition to have no contact with the victim on 1/12/21. |
| **ADDITIONAL INFORMATION** | On 4/4/21, an I-card was issued from the 28 Pct, Officer Vasquez after CV, Judith Thomas was punched by the subject with a closed fist causing her upper lip to bleed in the vicinity of 168 Lenox Ave NY, NY, cameras on scene on 104 W. 118 St, 161 Lenox Ave, and 168 Lenox Ave NY, NY captured the assault.  Subsequently, the subject stopped attending program, failed to observe his curfew, failed to report to parole, changed his residence, and absconded from parole. An Absconder Warrant was issued #0839282 on 4/8/21 |
| **ADDITIONAL CHARGES** | **Charge #3**<br>Kazzim Cooper violated Rule #8 of the conditions of release, when his behavior violated the provisions of law to which he is subject which provides for a penalty of imprisonment, in that on or about 4/4/21 at approximately 310pm in the vicinity of 168 Lenox Ave NY, NY when he came up to Judith Thomas with a closed fist and punched her about the face causing a laceration to her to her cheek.<br><br>**Charge #4**<br>Kazzim Cooper violated Rule #8 of the conditions of release, when his behavior threatened the health and safety of himself or others, in that on or about 4/4/21 at approximately 310pm in the vicinity of 168 Lenox Ave NY, NY he came up to Judith Thomas with a closed fist and punched her about the face causing a laceration to her to her cheek.<br><br>**Charge #5**<br>Kazzim Cooper violated Rule #8 of the conditions of release, when his behavior violated the provisions of law to which he is subject which provides for a penalty of imprisonment, in that on or about 4/4/21 at approximately 310pm in the vicinity of 168 Lenox Ave NY, NY when he came up to Judith Thomas with a closed fist and punched her about the face causing her to fall to the ground.<br><br>**Charge #6**<br>Kazzim Cooper violated Rule #8 of the conditions of release, when his behavior threatened the health and safety of himself or others, in that on or about 4/4/21 at approximately 310pm in the vicinity of 168 Lenox Ave NY, NY he came up to Judith Thomas with a closed fist and punched her about the face causing her to fall to the ground. |

CS4003

 **Corrections and Community Supervision**

Charge #7
Kazzim Cooper violated Rule #13 of the conditions of release, in that on or about 4/5/21 at approximately 832pm, at 152 W. 118 St Apt 5E NY, NY he failed to fully comply with the special written conditions that were imposed on 1/12/21 directing him to NOT change his program without the permission of his parole officer.

Charge #8
Kazzim Cooper violated Rule #13 of the conditions of release, in that on or about 4/7/21 at approximately 8:32 pm, at 152 W. 118 St Apt 5E NY, NY he failed to fully comply with the special written conditions that were imposed on 1/12/21 directing him to remain inside his approved residence 8pm-8am daily

Charge #9
Kazzim Cooper violated Rule #4 of the conditions of release, in that on or About 4/7/21 he failed to discuss with his Parole Officer a change in his residence at 152 W. 118 St. Apt 5E NY, NY.

Charge #10
Kazzim Cooper violated Rule #13 of the conditions of release, in that he failed make his office report on 4/8/21and thereafter to the Man VI Area Office located at 314 W. 40 St. NY, NY as directed on 4/1/21 during a homevisit with PO Black.

Charge #11
Kazzim Cooper violated Rule #3 of the Conditions of Release in that on or about 4/8/21 he absconded from the Department of Corrections and Community Supervision.

Charge #12
Kazzim Cooper violated Rule #1 of the Conditions of Release in that he failed to make his office report on 4/8/21 as directed on 4/1/21 during a homevisit with PO Black.

**PRESENT STATUS**

The subject's whereabouts are unknown, however all efforts are being made to apprehend the subject.

**ADDITIONAL POSSIBLE WITNESSES**
Judith Thomas

**DOCUMENTS PROVIDED**

Arrest Report

| PO Black | | |
|---|---|---|
| **Name/Title** | **Signature** | 4/9/21 **Date** |
| SPO Johnson | | |
| **Name/Title** | **Signature** | 4/16/2024 **Date** |

CS4003

CS3010 – Addendum (Standard Conditions of Release) July 8, 2020

15A3590 Cooper, Kazzim

**STATE OF NEW YORK**
**DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION (DOCCS)**
**CERTIFICATE OF RELEASE TO COMMUNITY SUPERVISION**
**9 NYCRR Section 8003.2 (Effective July 8, 2020)**

| | |
|---|---|
| **NAME: Cooper, Kazzim** | **NYSID: 05443349K    DIN: 15A3590** |
| **PAROLE OFFICER: Black, L** | **ASSIGNED BUREAU: Manhattan 6** |

I, **Cooper, Kazzim** do hereby agree to abide by the following Conditions of Release as established by the New York State Board of Parole. I understand that Community Supervision is defined by these Conditions of Release and all other conditions that may be imposed upon me by the Board of Parole or an authorized representative of the Department of Corrections and Community Supervision. The following Conditions of Release are effective July 8, 2020, and all previously imposed special conditions of release shall remain in effect.

**CONDITIONS OF RELEASE**

1. I will proceed directly to the area to which I have been released and, within twenty-four hours or by the next available business day after my release, make my arrival report to the Community Supervision Office indicated below. I will make office and/or other reports thereafter as directed by my Parole Officer.

2. I will not leave the State of New York or any other state to which I am released or transferred, or any area defined in writing by my Parole Officer without permission.

3. I will not abscond, which means intentionally avoiding supervision by failing to maintain contact with my Parole Officer and failing to reside at my approved residence.

4. I will permit my Parole Officer to visit me at my residence, will permit the search and inspection of my person, residence and property, and will discuss any proposed changes in my residence, employment or program status with my Parole Officer.

5. I will reply promptly, fully and truthfully to any inquiry of, or communication by, my Parole Officer or other representative of the Department of Corrections and Community Supervision.

6. I will notify my Parole Officer any time I am in contact with, or arrested by, law enforcement. I understand, like every member of the public, I have a right to seek the assistance of law enforcement at any time.

7. I will not act in concert with a person I know to be engaged in illegal activity.

8. I will not behave in such a manner as to violate the provisions of any law to which I am subject which provides for a penalty of imprisonment, nor will my behavior threaten the health and safety of myself or others.

9. I will not own, possess, or purchase a shotgun, rifle, or firearm of any type including any imitation firearm. I will not own, possess or purchase any deadly weapon or use any dangerous instrument, as those terms are defined under Article 10 of the Penal Law. Further, I will not possess a dangerous knife or razor without the permission of my Parole Officer.

10. In the event that I leave the jurisdiction of the State of New York, I hereby waive my right to contest extradition to the State of New York from any state in the Union and from any territory or country outside the United States. This waiver shall be in full force and effect until I am discharged from community supervision. I fully understand that I have the right under the Constitution of the United States and under law to contest an effort to extradite me from another state and return me to New York, and I freely and knowingly waive this right as a condition of my community supervision.

11. I will not use or possess any drug paraphernalia or use or possess any controlled substance without proper medical authorization.

12. I will fully comply with the instructions of my Parole Officer.

13. I will fully comply with those special conditions set by my Parole Officer, a Member of the Board of Parole or an authorized representative of the Board or the Department of Corrections and Community Supervision. I understand that special conditions are additional conditions, set on an individualized basis, meant to be reasonably tailored to my circumstances and aimed toward my rehabilitation. I will fully comply with the following special conditions: (all previously imposed special conditions of release shall remain in effect)

I fully understand that a violation of any condition of release in an important respect may result in the revocation of my period of Community Supervision. I hereby certify that I understand and have received my Certificate of Release to Community Supervision.

Signed the ___8th___ day of ___JANUARY___, 20 __21__

Releasee: _Kazzim Cooper_

Witness Signature: _PO Barbara Darden_

Witness Name: _PO Barbara Darden_

Witness Title: **PAROLE OFFICER**

STATE OF NEW YORK
EXECUTIVE DEPARTMENT – DIVISION OF PAROLE
**SPECIAL CONDITIONS OF RELEASE TO PAROLE SUPERVISION**

Name: _KAZZIM COOPER_    NYSID: _05443349K_

Date of Release: _12/7/2018_    Supervision Maximum: _1/20/24_

I, _KAZZIM COOPER_, acknowledge that under the provisions of my Conditions of Release that the following Special Conditions have been imposed upon me and that these Special Conditions will remain in effect until the termination of my legal period of supervision. _1/28/24_ Unless otherwise amended, in writing by the Department of Corrections and Community Supervision.

1. I will observe a curfew Sunday through Saturday _8PM_ to _8AM_ 7 days a week.

2. I will only reside at the address my Parole Officer has on record for me _152 W. 118 ST APT 5E NY, NY_

3. I will keep my appointment for treatment assessment and intake at _BRC_ located at _127 W 25 ST. NY, NY_ on _1/19/21_ at _9:00 AM_ — ANGER MAN
   I will answer fully and truthfully during my treatment evaluation and assessment. — MH
   — SA

4. I will NOT change my program, or address without prior written permission from my Parole Officer.

5. I will NOT leave the (5) boroughs of New York City without written permission from my Parole Officer.

6. I am on weekly reporting status, 314 W. 40 St NY, NY, every Thursday.

7. If I cannot make the office report as directed, I will contact my Parole Officer immediately and report within 24 hours.

8. I will submit to random urine testing upon request.

9. I will inform my Parole Officer immediately if at any time I am NOT attending my program as I am scheduled.

10. I will not act in a manner that will have me discharged, before completion of my program.

11. I will not use or possess Cocaine, Opiates, PCP, Amphetamines, Methamphetamines, unprescribed mood altering substances, Marijuana or Synthetic Marijuana/K2.

12. If I am prescribed medication, I will take it the way it is prescribed on a daily basis as instructed by the Physician.

13. I will not consume or possess alcohol or linger in places where alcohol is served or sold as its main business.

14. I will contact my Parole Officer immediately if at any time I am arrested.

15. I will make an office report to 314 W. 40 St. NY, NY upon release from any law enforcement custody.

I hereby certify that I have read and understand the above Special Conditions of my release and that I have received a copy of these Special Conditions.
Signed this _12_ day of _JAN_, _21_
Release: X _Kazzim Cooper_    Witness: _[signature]_

COPY TO RELEASEE, COPY TO AREA OFFICE, COPY TO CENTRAL OFFICE

